FITCH/LAROCCA ASSOCIATES, INC., Plaintiff-Appellee, *v.*
SAMUEL K. SKINNER *et al.*, Members, Illinois Capital Development Board, Defendants-Appellants.

First District (4th Division)    No. 81-394

Opinion filed April 29, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Robert Orman, Assistant Attorney General, of counsel), for appellants.

S. Joseph Formusa, of Rabens, Formusa & Glassman, Ltd., of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Fitch/Larocca Associates, Inc. (Fitch), is an architectural firm which has been employed on various State of Illinois construction projects. The defendant, Illinois Capital Development Board (Board), is the State agency in charge of such projects. In order for architects to be eligible for employment on State construction projects, they must be prequalified to determine their responsibility by the Board. Immediately prior to this appeal, Fitch received notice from the Board that it intended to suspend Fitch's prequalification status pursuant to Board rules. To stave off this result, Fitch brought the present lawsuit to enjoin the Board from taking any further action to suspend its prequalification status. The court issued a preliminary injunction to enjoin the hearing and then, when the court refused to dissolve this preliminary injunction, the Board brought the instant appeal.

Fitch does not dispute the fact that there may be a suspension hearing. The question is must the suspension hearing be held pursuant to the rules established by the Board itself or must the hearing be held under the provisions of the Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1001 *et seq.*). The determinative issue on appeal is whether or not the rules dealing with prequalification suspension hearings promulgated by the Board are preempted by the contested cases procedure of the Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1010). The parties agree that the important difference between the rules as promulgated by the Board and the contested cases procedure of the Administrative Procdure Act is in the type of hearing for which they provide. The Board rules provide for an informal hearing without the benefit of the rules of evidence, cross-examination and the opportunity to make and preserve a record of the proceedings. In addition, under Board rules a party is only notified of its prequalification suspension after a specially constituted committee has met and has recommended prequalification suspension to the Board. The party is then given 14 days to file a written statement with the Board setting forth reasons why the recommendation should not be accepted by the Board. Under the contested cases procedure of the Administrative Procedure Act, the rules of evidence apply and there is a right to cross-examination. In addition, the Act requires that the party be notified of any preliminary reports that the agency is about to use in its deliberation and the party is given an opportunity to contest that material. Relevant case law has amplified these safeguards under the contested cases procedure by holding that implicit in the provision for cross-examination is that there be witnesses and testimony presented by

the agency and implicit in the application of the rules of evidence is an obligation to establish, in the first instance, a *prima facie* case. *Scott v. Department of Commerce and Community Affairs* (1981), 84 Ill. 2d 42, 53, 416 N.E.2d 1082.

A determination of whether or not the Board rules are preempted by the contested cases procedure of the Administrative Procedure Act depends upon a reading of three separate Illinois statutes. The relevant statutes are the Capital Development Board Act (Ill. Rev. Stat. 1979, ch. 127, par. 771 *et seq.*), the Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1001 *et seq.*) and the Illinois Purchasing Act (Ill. Rev. Stat. 1979, ch. 127, par. 132.6).

The Board was created by the Capital Development Board Act. Section 15 of the Capital Development Board Act adopts the provisions of the Illinois Administrative Procedure Act. The contested cases procedure of the Administrative Procedure Act apply whenever a State agency which is subject to the Administrative Procedure Act attempts to revoke a "license." A "license" is specifically defined in section 3.04 of the Administrative Procedure Act as follows:

> " 'License' includes the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission *required by law*." (Emphasis added.)

Both parties recognize that this definition sets out two requirements for a finding that a "license" exists under the Administrative Procedure Act: (1) that there is a permission involved and (2) that this permission is *required by law*. Both parties are in agreement that prequalification is a permission.

However, both parties disagree and join issue over the question of whether or not prequalification is *required by law*. According to the Board, there is no law that requires prequalification. Therefore, prequalification is not a license as defined by the Administrative Procedure Act and the contested cases procedure of the Act does not preempt Board rules in prequalification suspension hearings. According to Fitch, there is a law that requires prequalification. That law is section 6(a—1) of the Illinois Purchasing Act. Therefore, according to Fitch, prequalification is a permission required under law and thus a "license" as defined by the Administrative Procedure Act; so the more formal contested cases procedure of the Act preempts Board rules in prequalification suspension hearings.

An analysis of the Illinois Purchasing Act reveals that section 5 of the Purchasing Act generally requires that all purchases by State agencies shall be made in conformance with rules which shall be promulgated by the particular State agency making the purchase. Section 6 of the Purchasing Act (Ill. Rev. Stat. 1979, ch. 127, par. 132.6) deals with the

contents of those rules and says that in preparing those rules the State agency *may* provide that prospective bidders be prequalified. However, the pertinent section of the Purchasing Act applicable to the instant case is section 6(a—1) which specifically deals with construction contracts. It says that "In case of contracts for the construction of buildings, * * * the rules and regulations * * * *shall provide* that * * * architects * * * be prequalified to determine their responsibility." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 127, par. 132.6(a—1).

■■ The Board argues that the Purchasing Act only commands the Board to make rules for prequalification but does not specifically command that architects be prequalified. We agree that the statute does command the agency to make rules for prequalification. But, more importantly here, we also believe that the statute itself clearly says, and that the structure of the Act clearly indicates, that architects must be prequalified. Implicit in the statute's command that the Board make rules for prequalification of architects is the command that, in fact, architects are required to be prequalified. This is clearly a "law" that architects be prequalified. Therefore, we agree with Fitch that prequalification is a license as defined by the Administrative Procedure Act because prequalification is required by law under section 6(a—1) of the Illinois Purchasing Act.

By concluding that prequalification is a license as defined by the Administrative Procedure Act, we adopt Fitch's position that since prequalification is a license, prequalification status can only be suspended in a hearing held under the contested cases procedure of the Administrative Procedure Act. Therefore, Board rules outlining the format for prequalification suspension hearings are preempted by the more formal provisions of the contested cases procedure of the Act.

The Board makes one other argument on preemption which is equally unavailing. Specifically, the Board argues that the legislature could not have intended the contested cases procedure of the Administrative Procedure Act to apply to prequalification suspension hearings because neither the organic legislation creating the Board nor the contested cases procedure makes provision for what the Board characterizes as the two "absolute prerequisites" to any "trial type" proceedings; the subpoena power and authority to administer oaths.

■■ We do not believe that these "gaps" in any way serve to contradict our conclusion that the Administrative Procedure Act with its more formalized hearing procedures is appropriate in prequalification suspension hearings. As we have already discussed, the contested cases procedure of the Administrative Procedure Act delineates the boundaries of evidence admissibility, permits evidentiary objections, and grants the right to cross-examination. Such procedures in themselves afford Fitch greater safeguards than under existing Board rules. Also, these safeguards have been

amplified by case law which holds that the Board must present witnesses and testimony and that the Board has the obligation to establish a *prima facie* case. (*Scott v. Department of Commerce and Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.) Thus, even without the subpoena power or a specific grant of authority to administer oaths, which in fact can be administered by notaries public (Ill. Rev. Stat. 1979, ch. 101, pars. 1 and 2), the relevant provisions of the Illinois Administrative Procedure Act impose upon the Board a greater obligation in handling Fitch's possible prequalification suspension than it would bear under Board rules.

Therefore, for the above reasons, we hold that prequalification is a license, that the contested cases procedure of the Administrative Procedure Act applies to prequalification suspension hearings and that the trial court was correct in not dissolving the preliminary injunction because of Fitch's likelihood of *success on the merits.*

Affirmed.

JOHNSON, P. J., and LINN, J., concur.