[No. 63074-7. En Banc.]
Argued June 11, 1996. Decided August 8, 1996.

SEATTLE BUILDING AND CONSTRUCTION TRADES COUNCIL, ET AL., *Appellants*, v. THE APPRENTICESHIP AND TRAINING COUNCIL, ET AL., *Respondents*.

*Hafer, Price, Rinehart & Robblee*, by *Richard H. Robblee* and *Hugh Hafer*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Thomas M. Adkins* and *Lynn Hendrickson, Assistants*; and *Judd H. Lees*, for respondents.

MADSEN, J. — Respondent Washington State Apprenticeship and Training Council (Apprenticeship Council) approved Respondent-Intervenor Construction Industry Training Council's (CITC's) apprenticeship program pursuant to RCW 49.04. Appellant Seattle-King County Building and Construction Trades Council and others (Appellants) maintain that the Council's approval of apprenticeship programs is subject to the Administrative Procedure Act's provisions for adjudications. We conclude that an adjudicatory proceeding is required and accordingly remand this matter for a formal adjudicatory hearing.

## STATEMENT OF CASE

RCW 49.04, enacted in 1941, concerns apprenticeship and training programs ("apprenticeship agreements"). In RCW 49.04.010, the Legislature established the Apprenticeship Council to develop detailed standards for apprenticeship agreements in accord with RCW 49.04, to issue necessary rules and regulations to carry out the intent and purpose of the chapter, and to perform other duties as required. RCW 49.04.010. The Apprenticeship Council consists of seven members, six appointed by the Director of the Department of Labor and Industries (three representing employer and three representing employee

interests), and the seventh is appointed by the Governor as a public representative. RCW 49.04.010. The Director also appoints a supervisor of apprenticeship within the Department. RCW 49.04.030.

In accord with the legislative directive in RCW 49.04.010, the Apprenticeship Council has adopted rules governing its own procedures and establishing standards for approval and oversight of apprenticeship programs. WAC 296-04. Any organization desiring to register an apprenticeship or training program must submit proposed standards consistent with the statutes and regulations to the supervisor at least 45 days before the regular quarterly meeting of the Apprenticeship Council. WAC 296-04-005. At the meeting, which is open to the public, the proposed standards are discussed and, by vote of the Council, "approved, disapproved, or approved subject to enumerated changes." WAC 296-04-005.

RCW 49.04.070 provides that election to conform with the provisions of RCW 49.04 is voluntary. However, while compliance with RCW 49.04 is voluntary, Apprenticeship Council approval of an apprenticeship program triggers application of other statutory provisions. Under RCW 39.12.021, employers of Apprenticeship Council registered apprentices are exempted from paying them, on state public works projects, prevailing wage rates for journey level workers in the trade as would otherwise be required. Under RCW 51.12.130, only Apprenticeship Council registered apprentices have workers' compensation coverage while being instructed. RCW 19.28.610 provides that certain Apprenticeship Council registered apprentices may engage in certain electrical utility work without holding an electrician certificate.

In December 1993, CITC applied to the Apprenticeship Council for registration of its apprenticeship training programs pursuant to RCW 49.04. It sought approval of apprenticeship training in the electrical, carpentry, painting, plumbing, heating/air conditioning, and sheet metal trades. CITC's program is intended to provide training for nonunion (open shop) contractors.

Appellants are two union councils, the Seattle-King County Building and Construction Trades Council and Painters District Council No. 5, and three joint labor-management apprenticeship and training committees, Puget Sound Electrical Apprenticeship and Training Trust, Seattle Area Plumbing and Pipefitting Industry Journeyman and Apprentice Training Committee, and Sno-King Sheet Metal Joint Apprenticeship and Training Committee. Almost all affiliate unions of the Seattle Construction and Building Trades Council represent building trade apprentices, and almost all of the affiliates sponsor, along with employer organizations, apprenticeship programs which are registered with the Apprenticeship Council. The three committees among appellants are such apprenticeship committees, in the electrical, plumbing/heating, and sheet metal trades. Appellants' programs thus provide training in the same areas as CITC's.

At its April 21, 1994 meeting, the Apprenticeship Council considered CITC's application for approval of its training program. During this meeting, members of the Apprenticeship Council and the audience, including members of Appellant Seattle-King County Building and Construction Trades Council, raised a number of concerns about CITC's proposed standards, including claims that the standards were not adequate. The Council voted to approve the program if certain additional conditions were satisfied. On June 28, 1994, the acting secretary of the Apprenticeship Council advised CITC that the conditions had been satisfied and as of that date CITC's program was registered.

Appellants then sought judicial review under the Administrative Procedure Act (APA), RCW 34.05, of the Apprenticeship Council's action approving CITC's program. Appellants argued that the APA required the Apprenticeship Council to hold adjudicatory proceedings when it considered CITC's application. The superior court first orally ruled in favor of appellants. The Apprenticeship Council moved for reconsideration. CITC intervened,

filing a memorandum in favor of the Apprenticeship Council. The court then ruled in favor of the Apprenticeship Council and CITC, holding that adjudicatory proceedings were not required by the APA. Accordingly, registration of CITC's program was upheld.

Appellants appealed to this court, which granted direct review.

## STANDING

■ The Apprenticeship Council maintains that Appellants lack standing to seek judicial review of the Council's approval of CITC's apprenticeship program. Under the APA, a person "has standing to obtain judicial review of agency action if that person is aggrieved or adversely affected by the agency action." RCW 34.05.530. A person is so aggrieved or adversely affected when:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

RCW 34.05.530.

These three conditions are derived from federal case law.[1] *St. Joseph Hosp. & Health Care Ctr. v. Department of Health*, 125 Wn.2d 733, 739, 887 P.2d 891 (1995). The first

---

[1]Apprenticeship Council maintains that the APA standing requirements are more stringent than the federal standards because Council, APA or standards state that the asserted interests must be "among those that the agency was *required to consider.*" RCW 34.05.530(2) (emphasis added). As our reliance on federal case law in *St. Joseph Hosp. & Health Care Ctr. v. Department of Health*, 125 Wn.2d 733, 887 P.2d 891 (1995) indicates, we will look to federal cases addressing standing. *See also* RCW 34.05.001 (directing that APA be construed consistently with similar federal law); William R. Andersen, *The 1988 Washington Administrative Procedure Act—an Introduction*, 64 WASH. L. REV. 781, 825 (1989) (noting that United States Supreme Court has backed off from a stringent zone of interest analysis and that under state APA the underlying

and third conditions are often called the injury-in-fact requirement, and the second condition is known as the "zone of interest" test. *Id.* Not only are these particular provisions drawn largely from federal case law, the APA expressly states the Legislature's intent that "courts should interpret provisions of this chapter consistently with decisions of other courts interpreting similar provisions of . . . the federal government . . . ." RCW 34.05.001.

 The injury-in-fact requirement is satisfied. Where an agency refuses to provide a procedure required by statute or the Constitution, the United States Supreme Court "routinely grants standing to a party" despite the fact that "any injury to substantive rights attributable to failure to provide a procedure is both indirect and speculative." 3 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 16.5, at 31 (3d ed. 1994) (citing *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 109 S. Ct. 1835, 104 L. Ed. 2d 351 (1989) and *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)); *see also* 13 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.4, at 433 (2d ed. 1984) ("often enough to show that an executive or administrative agency has failed to comply with procedural requirements that might have affected the ultimate decision, even though the decision might well have remained unchanged;" "[f]ailure to comply with procedural requirements of itself establishes sufficient injury to confer standing"). In dicta in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), the Court said:

There is this much truth to the assertion that "procedural

---

question is whether the Legislature intended that the agency consider a person's asserted interests). Contrary to Apprenticeship Council's suggestion, moreover, it is not necessary that a statute expressly state that those interests are required to be considered. In *St. Joseph Hosp.*, the court held that the respondent had standing even though no statute expressly stated the agency had to consider respondent's interest. *See* 3 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 16.9, at 54 (3d ed. 1994) (statutes explicitly addressing standing are relatively unusual).

rights" are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy. Thus, under our case-law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

The Court rejected, however, the premise that one with no concrete interest could assert such procedural rights. *Id. See also, e.g., Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 445-47 (9th Cir. 1994); *Moreau v. Federal Energy Regulatory Comm'n,* 982 F.2d 556, 566-67 (D.C. Cir. 1993); *Empire Power Co. v. North Carolina Dep't of Env't, Health & Natural Resources,* 447 S.E.2d 768, 780-81 (1994).

Thus, contrary to Apprenticeship Council's position, the fact that any economic injury to Appellants may not be immediate, or the fact that the decision of the agency would be no different under formal adjudicatory proceedings is not dispositive of the standing question if Appellants have a concrete interest protectable by a requirement of formal adjudicatory proceedings.

■ Appellants have asserted such an interest. The United States Supreme Court "routinely recognizes probable economic injury resulting from agency actions that alter competitive conditions as sufficient to satisfy" the injury-in-fact requirement. KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE, § 16.4, at 13, § 16.5, at 30-31 (3d ed. 1994) (citing cases); *see, e.g., International Longshoremen's & Warehousemen's Union v. Meese,* 891 F.2d 1374, 1379 (9th Cir. 1989) (union challenged agency certification of foreign workers to load logs in United States waters; because of foreign competition, union members lost opportunity to compete for

traditional longshore jobs and this established sufficient injury).

RCW 49.04.030 provides that with the advice and guidance of the Apprenticeship Council, the supervisor of apprentices with the Department of Labor and Industries "shall . . . [e]ncourage and promote the making of apprenticeship agreements conforming to the standards established by or in accordance with this chapter," and "when so authorized by the apprenticeship council, register such apprenticeship agreements as are in the best interests of the apprentice and conform to the standards established by or in accordance with this chapter[.]" RCW 49.04.040 provides for the approval of local and state apprenticeship committees whenever the apprentice training needs of a trade or group of trades justifies establishment of such a committee. The committees "shall devise standards for apprenticeship agreements" "[s]ubject to the review of the council and in accordance with the standards established by [RCW 49.04] . . . ." RCW 49.04.040. RCW 49.04.050 sets forth certain required standards for apprenticeship agreements. WAC 296-04-270(2)(b) states that proposed standards must be consistent with the standards for apprenticeship already approved by the Apprenticeship Council for the industry, trade or craft in question to ensure statewide uniformity of standards to the end that they are "designed to achieve the same levels of skills as existing standards within the state for that industry, trade, or craft."

■ Existing programs have an interest in contesting what they believe to be inadequate standards in order to prevent entry of new, substandard programs into the market which will deplete the work opportunities of apprentices of existing programs, including their own. They also have an interest in attracting qualified apprentices, and additional programs will mean more competition for those apprentices; thus, they have an interest in assuring the competition is on a level field; i.e., only programs complying with statutory and regulatory requirements will obtain Apprenticeship Council approval.

Further, RCW 39.12.021 gives a competitive advantage to Apprenticeship Council approved apprenticeship programs and employers of their apprentices because employers of apprentices in those programs can submit bids reflecting lower wages to registered apprentices. Approval of CITC's programs is thus likely to affect job opportunities for members of Appellants' affiliate unions. In addition, RCW 51.12.130(3) provides a significant incentive for apprentices to participate in an approved program, as workers' compensation coverage and benefits for time spent in training is available. The more programs approved, the more competition there will be among the programs for qualified apprentice candidates.

The second condition of RCW 34.05.530 involves the "zone of interest" test. *St. Joseph Hosp.*, 125 Wn.2d at 739; *see Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970). Resulting from concerns that not every person "potentially affected by agency action in a complex interdependent society" should be permitted to have judicial review, the "zone of interest" test serves as a filter to limit review to those for whom it is most appropriate. William R. Andersen, *The 1988 Washington Administrative Procedure Act—An Introduction*, 64 WASH. L. REV. 781, 824-25 (1989). However, although the zone of interest test serves as an additional filter limiting the group which can obtain judicial review of an agency decision, the "test is not meant to be especially demanding." *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399, 107 S. Ct. 750, 93 L. Ed. 2d 757 (1987). "The test focuses on whether the Legislature intended the agency to protect the party's interests when taking the action at issue." *St. Joseph Hosp.*, 125 Wn.2d at 739-40 (citing Andersen, 64 WASH. L. REV. at 825).

Thus, the court's task is to determine whether the Legislature intended that Appellants' interest be protected by the agency. Apprenticeship Council says it considered all the interests it was required to consider under RCW 49.04. Apprenticeship Council maintains that, unlike the

statutes examined in *St. Joseph Hosp.*, RCW 49.04 does not show legislative intent that cost containment or regulation of competition was intended.

■ We agree with Appellants, however, that the Apprenticeship Council was required to consider competitor's interests because, as explained above, the statutory and regulatory schemes contemplate that new programs must match the standards of existing programs. Also, the Apprenticeship Council is directed by the Legislature to register apprenticeship agreements which are in the best interests of the apprentices, and it is in their best interests that they be treated fairly and uniformly. It follows that the Legislature intended that programs not complying with the statutory and regulatory requirements should not be allowed to compete with the same agency approval as complying programs, and accordingly that the Apprenticeship Council consider complying programs' interests in seeing that new programs conform to those requirements.

We also note that granting standing to competitors helps assure judicial review. *See St. Joseph Hosp.*, 125 Wn.2d at 742 (only competitors with the motivation to challenge improper granting of agency authorization).

## FORMAL ADJUDICATORY HEARING

■ Appellate review of superior court decisions under the Administrative Procedures Act (APA), RCW 34.05, is provided for by RCW 34.05.526. Review is under the standards in RCW 34.05.570. RCW 34.05.570(4)(b) authorizes judicial review when a person's rights are violated by an agency's failure to perform a duty required by law to be performed. Here, the duty the agency allegedly failed to perform was to hold an adjudicatory hearing required by RCW 34.05.422(1)(b).

The parties dispute whether, in conducting its review, this court should defer either to the superior court, which held that an adjudication under the APA was not required, or to the agency, the Apprenticeship Council.

■ ■ The issue before the court does not concern the merits of agency action, but whether provisions of the APA apply and require that an adjudicatory hearing be held on an application for approval of an apprenticeship program under RCW 49.04. This issue involves interpretation of provisions of the APA, specifically RCW 34.05.010(9)(a) and RCW 34.05.422(1)(b). Where the issue is the proper construction of a statute, review is de novo. *King County Fire Protection Dists. v. Housing Auth. of King County*, 123 Wn.2d 819, 825, 872 P.2d 516 (1994); *Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). No deference is due any interpretation given by Apprenticeship Council as to legislative intent or the statutes' meaning, as deference to agency interpretation of a statute is appropriate only where (a) the statute is ambiguous and (b) the agency is charged with its administration and enforcement. *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994); *Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d at 507; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813-14, 828 P.2d 549 (1992).

As to the superior court findings, the general rule is that a superior court's findings are not relevant in appellate review of an agency action; however, where the superior court takes additional evidence under RCW 34.05.562, as it is authorized to do under RCW 34.05.570(4)(b), the appellate court will look to the superior court record. *Waste Management*, 123 Wn.2d at 633-34. Thus, superior court findings may be relevant where the claim is that an agency failed to conduct a formal adjudication. In this case, though, there are no material disputed facts and the superior court findings do not affect resolution of the issues in this case.

Appellants maintain that Apprenticeship Council approval of an apprenticeship and training program under RCW 49.04 falls within RCW 34.05.422(1)(b), which provides that "applications for licenses that are contested

by a person having standing to contest under the law and review of denials of applications for licenses or rate changes shall be conducted as adjudicative proceedings[.]" RCW 34.05.010(9)(a) defines "license" as "a franchise, permit, certification, approval, registration, charter, or similar form of authorization required by law" with certain exceptions not relevant here. The dispute focuses on whether Apprenticeship Council approval of an apprenticeship program under RCW 49.04 is "required by law" within the meaning of RCW 34.05.010(9)(a). The phrase "required by law" is not defined in the APA.

Apprenticeship Council and CITC maintain that Apprenticeship Council approval of apprenticeship programs is not required by law because compliance with RCW 49.04 is by its terms strictly voluntary. While compliance with RCW 49.04 is voluntary, Apprenticeship Council approval is a prerequisite to coverage under other statutory provisions. The first of these is RCW 39.12.021. This statute provides that apprentices employed on state public works, for whom an apprenticeship agreement has been registered and approved under RCW 49.04, must be paid the prevailing wage rate for apprentices in the trade. However, the statute also provides that, absent registration and approval by the Apprenticeship Council, apprentices employed on state public works projects must be paid the prevailing wage rate for journey level workers in the trade.[2] RCW 51.12.130 provides that registered apprentices or trainees under RCW 49.04 in supplemental and

---

[2]The Ninth Circuit recently held that insofar as RCW 39.12.021 provides that employers of apprentices cannot pay them less than journey level workers' prevailing wage rate on public works projects absent their participation in an approved apprenticeship program, the statute is preempted by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1101, 1114 (1994). *Inland Empire Chapter of Associated Gen. Contractors v. Dear*, 77 F.3d 296 (9th Cir. 1996). The mandate in *Inland Empire* has been stayed pending review by the United States Supreme Court of *Dillingham Constr. N.A., Inc. v. County of Sonoma*, 57 F.3d 712 (9th Cir. 1995), *cert. granted*, 116 S. Ct. 1415 (1996), holding a similar California prevailing wage law preempted by ERISA. Whether ultimately the Court's decision in *Dillingham* invalidates or even affects RCW 39.12.021 remains to be seen. Our decision in this case does not depend upon the validity of that statute, as it is not the only statute conditioning coverage on Apprenticeship Council approval of an apprenticeship program.

related instructional classes are considered to be employees of the Apprenticeship Council and subject to RCW Title 51's workers' compensation benefits for the time spent in actual attendance in such classes. Nonregistered apprentices are not entitled to these benefits. RCW 51.12.130(3). RCW 19.28.610 provides that certain registered apprentices can perform certain electrical utility work without an electrician certificate.

■ The APA definition of "license" does not limit the "required by law" language to the laws administered by the agency. If any statute requires the "approval," "registration" or "similar authorization" (etc.) of the agency, a license "required by law" may be found within the meaning of the APA. In the case of the three statutes relied upon by Appellants, under certain circumstances approval is required to pay apprenticeship level wages, for apprentices to have workers' compensation coverage and benefits, and to engage in certain electrical work, or, stated conversely, it is unlawful to do these things without agency approval.

Under RCW 34.05.001, "courts should interpret provisions of [RCW 34.05] consistently with decisions of other courts interpreting similar provisions of other states, the federal government, and model acts." 5 U.S.C.A. § 551(8) (1996) provides that a "license" includes "registration" or "other form of permission." 5 U.S.C. § 558(c) (1994) provides that procedural protections are provided when application is made for a license "required by law."[3] Federal cases support the conclusion that agency approval in this case is a "license" "required by law." In one case, a medical laboratory had performed certain tests on aliens seeking permanent residency status, and had derived 15 percent of its income from such tests. *New York Pathological & X-Ray Lab., Inc. v. Immigration & Naturalization Serv., Inc.*, 523 F.2d 79 (2d Cir. N.Y. 1975). Under a new

---

[3]Apprenticeship Council maintains federal law is inapposite because the definition of license does not include "required by law." In light of 5 U.S.C. § 558(c) (1994), the federal cases are relevant.

rule, INS designation of a laboratory or other facility as an approved facility was required before it could perform these tests. The laboratory sued over INS's refusal to designate it as an approved facility. The court reasoned that INS's designation as an approved facility was "a license required by law" because absent that approval, the laboratory could not conduct the medical examinations, and held that the agency therefore had to provide notice and hearings when deciding which facilities to designate. *Id.* at 82. In *Blackwell College of Business v. Attorney General,* 454 F.2d 928 (D.C. Cir. 1971), INS withdrew approval from a business college as a place of study for nonimmigrant alien students. The court called such approval "a valuable asset in the nature of a license," *Id.* at 932, and held that INS had to provide procedural safeguards under 5 U.S.C. § 558(c) (1994) before approval could be withdrawn.

 In each of these cases the applicants for government approval were not required by law to hold a license for their respective enterprises (laboratory and business school), but the courts nevertheless held that licenses "required by law" were involved because a statute or rule required official approval for certain purposes. The same is true here.

Also supporting Appellants is *Fitch/Larocca Assocs., Inc. v. Skinner,* 106 Ill. App. 3d 522, 436 N.E.2d 17 (1982), where the court concluded that prequalification of architects to work on state construction projects was a license required by law. Although architects could lawfully work as architects without prequalification, by statute they had to be prequalified to work on state projects. *See also Bois Blanc Island Township v. Natural Resources Comm'n,* 158 Mich. App. 239, 404 N.W.2d 719 (1987) (written permission of agency required to dispose of garbage on state land is license required by law).

 CITC points out, though, that the Apprenticeship Council's approval has been construed as not constituting a license required by law in two Attorney General

opinions. Br. of Resp't, Att'y General Op. 1990 No. 017; Att'y General Op. 1989 No. 12. Generally, opinions of the Attorney General in construing statutes are entitled to great weight, though they are not binding. *Washington Educ. Ass'n v. Smith*, 96 Wn.2d 601, 606, 638 P.2d 77 (1981). The conclusions in both opinions rest on the premise that it is not unlawful to operate an apprenticeship program without Apprenticeship Council approval. While that is true, it fails to account, as we have noted, for other statutes which condition application upon agency approval.

Apprenticeship Council and CITC maintain, however, that approval by the Apprenticeship Council as it relates to the three statutes relates to "benefits," which are distinguishable from "licenses." They point out that "agency action" may include "licensing" or "the granting or withholding of benefits[,]" RCW 34.05.010(3), and argue that a license required by law is not involved where benefits like those under the three statutes are at issue. The distinction drawn in RCW 34.05.010(3) between types of agency action has to do with the fact that many agencies administer benefits such as welfare or unemployment benefits. The distinction does not resolve the present case and the fact that "benefits" in a generic sense may be obtained as a result of agency approval does not preclude the conclusion that agency approval is a "license." Granting of a licensee often "benefits" a person, such as granting a license to practice medicine.

 CITC also maintains that Appellants have failed to establish that any harm results from the lack of formal adjudicatory hearings, argues that the Apprenticeship Council's decision-making process is set by statute, and argues that there is a long history of apprenticeship training regulation which has occurred without adjudicative proceedings. CITC urges that the present system is adequate. The APA does not allow discretion to forego required formal adjudicatory proceedings on the grounds that another system is alleged to be adequate.

 We conclude that relief must be granted Appellants under RCW 34.05.570(4)(b) because the agency's failure to hold an adjudicatory hearing was arbitrary and capricious as it failed to follow RCW 34.05.422(1)(b). *See* RCW 34.05.570(4)(c)(iii). Appellants were deprived of significant procedural safeguards available in formal adjudicatory proceedings, including testimony taken under oath, the opportunity for structured cross-examination, and an agency order containing requisite findings, conclusions, and the reasons therefor. *See* RCW 34.05.449(2); RCW 34.05.452(3); RCW 34.05.461(3). Absent compliance with these and other procedural requirements, judicial review of the merits of agency action is significantly hampered and may even be effectively foreclosed. This matter must be remanded for a formal adjudicatory hearing.

We hold that Appellants have standing to seek review of the Apprenticeship Council's approval and registration of CITC's apprenticeship program. We further hold that the APA requires a formal adjudicatory hearing on an application for Apprenticeship Council approval and registration of an apprenticeship program under RCW 49.04. We reverse the superior court, set aside the Apprenticeship Council's approval of CITC's program, and remand this matter for a formal adjudicatory hearing under the APA.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

Reconsideration denied November 1, 1996.