# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NATIONAL ASSOCIATION OF VETERINARY TECHNICIANS IN AMERICA; WASHINGTON STATE ASSOCIATION OF VETERINARY TECHNICIANS; and WASHINGTON STATE VETERINARY MEDICAL ASSOCIATION, | No. 88019-5-I |
| | DIVISION ONE |
| Appellants, | UNPUBLISHED OPINION |
| v. | |
| THE VETERINARY BOARD OF GOVERNORS; THE DEPARTMENT OF LABOR AND INDUSTRIES, and CASCADE VETERINARY CLINICS, a Washington corporation, | |
| Respondents. | |
| AMERICAN VETERINARY MEDICAL ASSOCIATION; NATIONAL ASSOCIATION OF VETERINARY TECHNICIANS IN AMERICA; WASHINGTON STATE ASSOCIATION OF VETERINARY TECHNICIANS; and WASHINGTON STATE VETERINARY MEDICAL ASSOCIATION, | |
| Petitioners, | |
| v. | |
| THE DEPARTMENT OF LABOR AND INDUSTRIES, | |
| Respondent. | |

BIRK, J. — In this consolidated appeal, professional associations of veterinarians and veterinary technicians challenge a decision by the Washington State Apprenticeship and Training Counsel (Apprenticeship Council) refusing an adjudicatory hearing on their objection to an apprenticeship program to become a licensed veterinary technician. In a separate lawsuit, they sought declaratory relief barring planned approval by the state Veterinary Board of Governors (Veterinary Board) allowing an approved apprenticeship program to serve as a pathway to licensure as a veterinary technician. We conclude that the associations had standing to object to the apprenticeship program and we reverse the decision refusing them an adjudicatory hearing, but we affirm dismissal of their claims for declaratory relief.

I

Obtaining a veterinary technician license in Washington is governed by RCW 18.92.128. Until 2010, this statute provided two pathways through which a person could meet the prerequisites to sit for the licensing examination—one was by completing a "posthigh school course" approved by the state Veterinary Board, and the other was to have five years of "practical experience" with a licensed veterinarian. LAWS OF 2010, ch. 123, § 2. In 2010, the legislature amended RCW 18.92.128 to sunset the practical experience pathway. LAWS OF 2010, ch. 123, §§ 1-3. The changes to RCW 18.92.128 permitted individuals already on the practical experience pathway to complete their five years of practical experience through a sunset date of July 1, 2015. LAWS OF 2010, ch. 123, § 1. Because five years of

2

practical experience was required for veterinary technician licensure, the practical experience pathway was effectively closed to new entrants on July 1, 2010.

In September 2018, Cascade Veterinary Clinics (Clinic), a Wenatchee area veterinary care provider, approached the Veterinary Board to discuss a proposed licensed veterinary technician apprenticeship program. The Veterinary Board regulates the practice of veterinary medicine in Washington state under chapter 18.92 RCW. RCW 18.92.021. The Veterinary Board is charged with developing, administering, and approving licensure examinations for the practice of veterinary medicine, setting standards for the practice of veterinary medicine, and adopting rules necessary to carry out those purposes. RCW 18.92.030. One license that the board regulates is the veterinary technician license. RCW 18.92.128.

The Clinic returned to the Veterinary Board in October 2019, and "received approval to pursue the development of a post-secondary pathway to [veterinary technician] licensure." The Clinic received technical assistance from SkillSource[1] to develop a registered apprenticeship program for licensing veterinary technicians. In December 2020, the Veterinary Board reviewed letters from, among others, the Washington State Association of Veterinary Technicians and Washington State Veterinary Medical Association (referred to together, along with the National Association of Veterinary Technicians in America and American

---

[1] SkillSource is a nonprofit agency that provides leadership, administration, and oversight for programs devoted to the development of a skilled workforce in Chelan, Douglas, Grant, and Adams counties, and contract services in Okanogan county.

Veterinary Medical Association, as the "Associations") discussing their concerns with the proposed program.[2]

The Clinic's proposed apprenticeship program requires 6,000 hours of structured on the job training plus an additional 766 hours of "postsecondary [r]elated [s]upplemental [i]nstruction curricula that is graded and proctored." The instructional material is provided through courses at Wenatchee Valley College and at the Clinic, taught by college instructors, licensed doctors of veterinary medicine, and licensed veterinary technicians. For comparison, the traditional route to become a licensed veterinary technician is to complete an accredited college program which typically provides 970 classroom hours and 100 internship hours.

The Associations describe themselves as voluntary associations of veterinarians and veterinary technicians, with missions to improve veterinary medicine and promote the interests of their members. Washington law designates the American Veterinary Medical Association as the organization charged with accrediting veterinary programs.[3] WAC 246-933-250

---

[2] In this consolidated appeal, the American Veterinary Medical Association is a party in Case No. 23-2-01985-34, the petition for review of administrative agency action, but it is not a party in Case No. 23-2-01986-34, the declaratory judgment action. The other three associations are parties in both cases.

[3] The American Veterinary Medical Association is also referenced in chapter 18.92 RCW. For higher education facilities that receive public funds to use dogs or cats for scientific, educational, or research purposes, the facility's attending veterinarian must assess the health of the animals to determine if they are suitable for adoption consistent with guidelines promulgated by the American Veterinary Medical Association. RCW 18.92.270(1)(a).

4

At its May 5, 2022 special meeting, the Veterinary Board voted five to two to support the veterinary technician apprenticeship program. Representatives of the Associations spoke in opposition of the program at the meeting. On May 13, 2022, the Veterinary Board addressed a letter to the Apprenticeship Council, expressing support for the apprenticeship program and stating that if the Apprenticeship Council approved the program, the Veterinary Board "intend[ed] to undertake rulemaking to clarify that completion of a registered apprenticeship program makes a person eligible to take the required licensing examination."

The Department of Labor and Industries (L&I) is responsible and accountable for apprenticeship programs in Washington. RCW 49.04.010(1). The Apprenticeship Council operates under L&I, and is authorized to approve new apprenticeship programs and establish necessary program standards. RCW 49.04.010(2).

On September 30, 2022, the Associations formally objected to the Clinic's proposed apprenticeship program by sending a notice of contest or objection to proposed standards of apprenticeship and a letter to the Apprenticeship Council, arguing that the proposed program did not satisfy the minimum standards established by Washington law. The Associations requested that the Apprenticeship Council hold a hearing to address "whether the proposed new standard is properly aligned with the law, adversely affects the practices of [licensed veterinary technicians], and promote[s] high standards of care among animal patients."

On October 20, 2022, the Apprenticeship Council voted unanimously that the Associations did not have standing to object because "their asserted interests [were] not among those that the Agency was required to consider." The council then voted to approve the program's apprenticeship standards as amended. AR 474-75. On November 21, 2022, the Apprenticeship Council sent the Associations a letter notifying them that "the Council decided not to conduct an adjudicative proceeding with regard to [the Associations'] objections to the proposed apprenticeship standards of [the Clinic] for the occupation of [l]icensed [v]eterinary [technician]." The Associations appealed the Apprenticeship Council's decision to the "L&I Director."

On May 30, 2023, the L&I Director affirmed the Apprenticeship Council's decision to deny the Associations' request for a hearing on grounds that the Associations lacked standing. The Director concluded that the Associations were not "competitors" of the proposed apprenticeship program, as defined in WAC 296-05-003(15), and were therefore outside the zone of interests that the legislature intended the Apprenticeship Council to consider.

On June 29, 2023, the Associations filed two actions in superior court, a petition under the Administrative Procedure Act (APA), ch. 34.05 RCW (APA petition), and a complaint for declaratory judgment. The Associations sought judicial review and reversal of L&I's order, and a declaratory judgment that the Clinic's proposed apprenticeship program is unlawful because the 2010 amendment left only what they called a "posthigh school education program" as a pathway to licensure and eliminated the former "practical experience" pathway.

6

Meanwhile, while the Associations' appeal to the L&I Director was pending, the Veterinary Board had filed a preproposal statement of inquiry to update WAC 246-935-060, which sets eligibility to sit for licensed veterinary technician examinations, to "make it clear that a registered apprenticeship is a board-approved method for an applicant to become eligible for the veterinary technician national exam and licensure."  Wash. St. Reg. 23-07-007 (March 1, 2023).  After the Associations had filed their lawsuits, the Veterinary Board continued its rulemaking process and filed a proposed original notice for updated rule in October 2023.  Wash. St. Reg. 23-21-094 (October 18, 2023).  The proposed updated rule would add language to WAC 246-935-060(1), stating, "[c]ompletion of a Washington state apprenticeship program registered in accordance with chapters 296-05 WAC and 49.04 RCW," would satisfy the postsecondary educational program requirement and make one eligible to sit for the veterinary technician examination.  Wash. St. Reg. 23-21-094

In December 2023, the superior court issued an oral ruling dismissing the Associations' declaratory judgment action.  The superior court reasoned that the Associations had an available remedy against the Veterinary Board through an APA challenge to the Veterinary Board's ongoing rulemaking, and therefore a declaratory judgment against the Veterinary Board was unavailable.  The superior court dismissed the declaratory judgment action against L&I and the Clinic because of the pending APA petition.  The superior court entered written orders of dismissal in late January 2024.

7

On February 23, 2024, the Associations appealed the dismissal of their declaratory judgment action. On March 12, 2024, the superior court, pursuant to RCW 34.05.518, transferred the APA petition to this court for direct review. This court consolidated the two appeals.

In April 2024, the Veterinary Board filed a permanent rule, with an effective date of May 12, 2024. Wash. St. Reg. 24-09-036 (April 24, 2024). The rule added the earlier proposed language, stating that completion of an apprenticeship program registered with the Apprenticeship Council would make one eligible to sit for examination as a veterinary technician. Wash. St. Reg. 24-09-036.

II

The Associations "assert that the [L&I] Director's [o]rder is invalid agency action" and that they are entitled to relief under RCW 34.05.570(3)(c), because the Apprenticeship Council "failed to follow a prescribed procedure," and under RCW 34.05.570(4) because the "Council has failed to perform a duty that it is required by law to perform." The Associations argue that they had standing to request an adjudicative proceeding, and that their objection is not merely to veterinary technician licensing, but to the "standards of the apprenticeship program itself." The Associations request reversal of the L&I Director's order and a remand to L&I to compel the Apprenticeship Council to hold an adjudicative proceeding on the Associations' objections.

Judicial review of administrative actions is governed by the APA. Densley v. Dep't of Ret. Sys., 162 Wn.2d 210, 216, 173 P.3d 885 (2007). The party seeking relief bears the burden of proof. Id. at 217. "When reviewing an agency's

8

interpretation or application of a statute, this court uses the error of law standard and ' "may substitute its interpretation of the law for the agency's.' " Id. (quoting Postema v. Pollution Control Hr'g Bd., 142 Wn.2d 68, 77, 11 P.3d 726 (2000)). Administrative rules must be written within the framework and policy of applicable statutes, and cannot amend or change legislative enactments. Wash. State Hosp. Ass'n v. Dep't of Health, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015).

A

L&I asserts that the "Apprenticeship Council has proceedings to adjudicate whether to approve program standards for a new proposed apprenticeship program." "If a competitor objects to the proposed standards," it triggers procedures requiring adjudication by the Apprenticeship Council or the Office of Administrative Hearings. WAC 296-05-011(2)(c). A "[c]ompetitor" is defined as an "apprenticeship program providing training in the same or similar occupation as one already existing in a certain geographic area." WAC 296-05-003(15). L&I argues that because the Associations are not apprenticeship programs, they are not "competitors," as defined under the rules, so they lacked standing to object under WAC 296-05-003(15). Alternatively, L&I argues that the Associations lack standing because their interests "are not among those intended by the Legislature to support a challenge to the adoption of new apprenticeship programs." The Associations respond that whether a party is in the "zone of interests" must be determined "under the standards of RCW 34.05.530(2), and that case law has held that "competitor" was "*one type* of party" that had standing, but not the only type of

9

party that had standing to object to new programs. We agree with the Associations. The Associations have standing under the APA.

The director's order stated that WAC 296-05-011(2) was modified "by rule to allow a competitor to object to proposed standards" after Seattle Building & Construction Trades Council v. Apprenticeship & Training Council, 129 Wn.2d 787, 920 P.2d 581 (1996) (SBCTC). In SBCTC, the Apprenticeship Council approved standards for the Construction Industry Training Council's (CITC) apprenticeship program application for non-union "electrical, carpentry, painting, plumbing, heating/air conditioning, and sheet metal trades." 129 Wn.2d at 790-91. Two union councils, competitors of CITC, "raised a number of concerns about CITC's proposed standards" to the Apprenticeship Council, but the council approved CITC's program. Id. at 792. The union councils sought review under the APA, arguing that the Apprenticeship Council was required to hold adjudicatory proceedings to consider CITC's application. Id. The court held that the union councils had standing under the APA to obtain an adjudicatory proceeding. Id. at 804.

There are three requirements that must be met for a party to have standing under the APA,

> (1)     [t]he agency has prejudiced or is likely to prejudice that person;

> (2)     [t]hat person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

10

(3)    [a] judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

RCW 34.05.530. "The first and third conditions are often called the injury-in-fact requirement, and the second condition is known as the 'zone of interest' test." SBCTC, 129 Wn.2d at 793-94. "[T]he United States Supreme Court 'routinely recognizes probable economic injury resulting from agency actions that alter competitive conditions as sufficient to satisfy' the injury-in-fact requirement." Id. at 795 (quoting Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise, § 16.4, at 13, § 16.5, at 30-31 (3d ed. 1994)). The zone of interest test "serves as an additional filter limiting the group which can obtain judicial review of an agency decision," but " 'the test is not meant to be especially demanding.' " Id. at 797 (quoting Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399, 107 S. Ct. 750, 93 L. Ed. 2d 757 (1987)). The focus of the test is to determine whether the legislature intended for the agency to protect the party's interests in the action. Id. In SBCTC, the Apprenticeship Council was required to consider the interests of competitors to the proposed program because "the statutory and regulatory schemes contemplate that new programs must match the standards of existing programs." Id. at 798. This was because existing programs "have an interest in contesting what they believe to be inadequate standards in order to prevent entry of new, substandard programs into the market." Id. at 796.

The Associations satisfy the injury-in-fact requirement. The parties in SBCTC were competing apprenticeship programs, but in its analysis, the court focused on market competition factors—barriers to new market entrants,

competition for available work opportunities, and the present and future standards imposed on market participants. Id. at 796. The same rationale applies here to the Associations and the proposed apprenticeship program. The Associations' members will compete with future licensed veterinary technician apprentices for the same jobs. Changing the barrier of entry for the licensed veterinary technician market by admitting apprentices could lead to greater competition in the future. And the changed standards for a licensed veterinary technician could affect the reputation of all licensed veterinary technicians. As market competitors, the Associations, and their members, face probable economic injuries akin to those faced by the unions in SBCTC.[4]

The Associations satisfy the zone of interest test. A primary objection expressed by the Associations is that the standards of the proposed apprenticeship program are inadequate. The Apprenticeship Council was required to consider the interests of the Associations because the statutory and regulatory scheme underlying veterinary technician licensure requires that the professional standards prioritize "the interest of good veterinary health care delivery to the consuming public." See RCW 18.92.030(2)(a). And as the accrediting body recognized under Washington law, the American Veterinary Medical Association has a strong interest in preventing veterinary technician programs from entering the market if they have inadequate standards.

---

[4] The Associations argued in their appeal to the L&I Director that the American Veterinary Medical Association is paid "thousands of dollars" in fees by every accredited educational veterinary technician program in Washington. The proliferation of apprenticeship programs, like the one proposed by the Clinic, would likely threaten these fees.

The Apprenticeship Council's regulations cannot exclude parties that are granted standing under the APA. See Wash. State Hosp. Ass'n, 183 Wn.2d at 595. Under the APA, the Associations had standing to object to the proposed apprenticeship standards.

B

Because the Associations had standing to object to the proposed apprenticeship standards, the Associations were entitled to an adjudicatory proceeding before the Apprenticeship Council.

Under the APA, "applications for licenses that are contested by a person having standing to contest under the law" must be "conducted as adjudicative proceedings." RCW 34.05.422(1)(b). The APA defines "license," as a "franchise, permit, certification, approval, registration, charter, or similar form of authorization required by law." RCW 34.05.010(9)(a). In SBCTC, approval of the contested apprenticeship program triggered access to potential benefits under statute, including workers' compensation and employment on state public works. 129 Wn.2d at 800-01. The court held that because it is "unlawful to do these things without agency approval," i.e., without program approval by the Apprenticeship Council, an apprenticeship standards application to the Apprenticeship Council is therefore an application for a "license" under the APA. Id. at 801-02 (when a "statute or rule required official approval for certain purposes" a "license required by law" is present). "The APA requires a formal adjudicatory hearing on an application for Apprenticeship Council approval and registration of an apprenticeship program under [chapter 49.04 [RCW]." Id. at 804.

13

Failure to hold an adjudicatory proceeding, when it is required under RCW 34.05.422(1)(b) deprives the objector of the "significant procedural safeguards available in formal adjudicatory proceedings, including testimony taken under oath, the opportunity for structured cross-examination, and an agency order containing requisite findings, conclusions, and reasons therefor." Id. at 804. In SBCTC, after the court decided that the competitor unions had been deprived of the mandatory adjudicatory proceeding, the court reversed the Apprenticeship Council's approval of the objected to program, and remanded for a formal adjudicatory proceeding. Id.

The circumstances before us are similar. RCW 18.92.128(2) requires completion of a "posthigh school course approved by the [Veterinary Board]" for an individual to be eligible for a veterinary technician license. The Apprenticeship Council's approval of the Clinic's program serves as "official approval for certain purposes," under the APA, see SBCTC, 129 Wn.2d at 802, because approval of the proposed program standards was a prerequisite for the Veterinary Board to engage in rulemaking to clarify that completion of the apprenticeship program established eligibility for licensure.[5] This requires the Apprenticeship Council's approval. WAC 296-05-011(1)(c). As in SBCTC, approval of the proposed apprenticeship program confers benefits under statute, making program approval a "license," which, when objected to by a party with standing, triggers a mandatory

---

[5] Indeed, under the rule promulgated by the Veterinary Board in 2024, for a veterinary technician apprentice to be eligible to sit for licensure, they must complete a program "registered in accordance with chapters 296-05 WAC and 49.04 RCW," the rules and chapter for the Apprenticeship Council. WAC 246-935-060(1)(c).

14

adjudicative proceeding. RCW 34.05.422(1)(b). In denying the Associations' right to an adjudicatory proceeding, the Apprenticeship Council failed to follow a prescribed procedure required under RCW 34.05.570(3)(c), and it failed to perform a duty required by law under RCW 34.05.570(4). See RCW 34.05.422(1)(b).

We reverse the Apprenticeship Council's approval of the Clinic's proposed apprenticeship program standards, and we remand for the Apprenticeship Council to hold the required adjudicatory proceeding.

III

The Associations argue that the trial court erred in granting the Veterinary Board's motion to dismiss because there was no remedy at law available under the APA at the time of dismissal. The Veterinary Board contends that the Associations' claim fails because the Uniform Declaratory Judgment Act (UDJA), chapter 7.24 RCW, does not apply to agency rulemaking that is separately reviewable under the APA. We agree with the Veterinary Board.

We review an order granting a motion to dismiss under CR 12(b)(6) de novo. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). We presume all facts alleged in the plaintiff's complaint are true. Id. With exceptions not relevant here, the APA establishes the exclusive means for judicial review of agency action. RCW 34.05.510; Lakeside Indus., Inc. v. Dep't of Revenue, 1 Wn.3d 150, 155, 524 P.3d 639 (2023). This includes judicial review of challenges to a regulation based on the theory that the implementing agency has exceeded its statutory authority. See RCW 34.05.570(2)(c), (3)(b), (4)(c)(ii) (courts may grant

relief under the APA when an agency rule, order, or other action exceeds the statutory authority of the agency).

The declaratory judgment action brought by the Associations constituted a challenge to the validity of a state agency rule. At the time the action was filed, the Veterinary Board was engaged in formal rulemaking. The Veterinary Board had already submitted a preproposal statement of inquiry in which it described its intent to "amend[] the rules to make it clear that a registered apprenticeship is a board-approved method for an applicant to become eligible for the veterinary technician national exam and licensure." Wash. St. Reg 23-07-007, at 1. In their declaratory judgment action, the Associations requested that the court effectively preempt the rule proposed by the Veterinary Board. Specifically, the Associations requested that the court "[e]nter a declaratory judgment holding that . . . an apprenticeship may not be substituted for the posthigh school educational program required by law." Because challenges to agency action may be brought only under the APA, the Associations failed to state a claim upon which relief could be granted under the UDJA.

The Associations also argue that the trial court erred in dismissing its complaint because, at the time of the dismissal, there was no "state agency action" for the court to review. The UDJA "does not apply to state agency action reviewable under chapter 34.05 RCW [the APA]." RCW 7.24.146. The Associations argue that, because no rule was formalized at the time of dismissal, the Veterinary Board's actions were not reviewable under the APA and were thus subject to challenge under the UDJA. The Associations' argument still violates the

16

principle of APA exclusivity. The Veterinary Board's rulemaking is governed by the APA, see RCW 34.05.310.395, and its rulemaking remains "reviewable" under the APA in the manner that law prescribes. See RCW 34.05.570(2). The combination of the UDJA's express exclusion of agency action reviewable under the APA, the APA's express declaration that it affords the exclusive means of challenging agency action, the APA's comprehensive governance of agency rulemaking, and the APA's express provisions for challenging rulemaking together evince clear legislative intent that the Associations' challenge to the Board's proposed and now adopted rule cannot be brought preemptively under the UDJA and instead must be brought pursuant to the exclusive provisions of the APA. See Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (to discern legislative intent, the court considers the context of the statute, related provisions, and the statutory scheme as a whole). This does not change just because such a claim is not yet ripe according to APA procedure. See Thun v. City of Bonney Lake, 164 Wn. App. 755, 762, 764, 265 P.3d 207 (2011) ("In Washington, ripeness is often called 'exhaustion of administrative remedies.' "); Cost Mgmt. Servs., Inc. v. City of Lakewood, 178 Wn.2d 635, 642, 310 P.3d 804 (2013) (One purpose underlying the exhaustion rule is to "insure against premature interruption of the administrative process."). The superior court properly dismissed the Associations' UDJA claim against the Veterinary Board. And because the Associations do not separately brief the dismissal of their UDJA claim against L&I, we affirm that dismissal on the same basis.

IV

We reverse the Apprenticeship Council's approval of the Clinic's veterinary technician apprenticeship program standards and remand for an adjudicative hearing on the proposed apprenticeship program standards before the Apprenticeship Council.  The superior court's dismissal of the Associations' declaratory judgment action is affirmed.

Birk, J.

WE CONCUR:

Díaz, J.

Coburn, J.