145 P.3d 1247 (2006)
MAPLE VALLEY PROFESSIONAL FIRE FIGHTERS LOCAL 3062, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO, CLC, Appellant,
v.
KING COUNTY FIRE PROTECTION DISTRICT NO. 43 and the Board of Commissioners thereof, Respondents.
No. 56807-8.
Court of Appeals of Washington, Division 1.
October 30, 2006.
James Henry Webster, Lynn Denise Weir, Webster Mrak & Blumberg, Seattle, WA, Michael A. Duchemin, Attorney at Law, Poulsbo, WA, for Appellant.
Lawrence Burlison Hannah, Donald W. Heyrich, Perkins Coie LLP, Bellevue, WA, for Respondents.
*1248 GROSSE, J.
¶ 1 A grievance arbitration clause does not survive the expiration of a collective bargaining agreement with regard to grievances arising after the expiration date of the agreement. Here, the grievance arose one year after the expiration of the collective bargaining agreement; thus the Union is not entitled to the grievance arbitration procedures established under the expired collective bargaining agreement. We affirm.

FACTS
¶ 2 This case involves a labor dispute between the Maple Valley Fire Fighters Local 3062 (Union) and the King County Fire Protection District No. 43 (District). The collective bargaining agreement (CBA) between the parties expired in December 2003. The District and Union had commenced labor negotiations for a new CBA in June 2003 but had been unable to agree to terms by the time this lawsuit commenced in April 2005.
¶ 3 In late 2004, the Washington State Fire Commissioners Association discontinued one of the health plans that the fire fighters had been allowed to use. In the present lawsuit, the Union filed an action in superior court seeking (1) an order compelling arbitration of their grievance regarding the discontinuation of the health plan and (2) a decision as to whether the District violated the CBA and various sections of the Public Employees' Collective Bargaining Act (PECBA) by permitting the alleged reduction in medical insurance benefits. The District successfully moved to dismiss the arbitration claim pursuant to CR 12(b)(6) on grounds that grievance arbitration provisions, such as the one contained in the expired CBA that the Union sought to enforce, do not remain in effect during a hiatus between CBA's. The remaining claim was set for trial.
¶ 4 The Union appealed the arbitration claim and the District moved this court to dismiss the appeal as premature. A hearing was set before a commissioner of this court and the commissioner concluded that the order appealed from was appealable pursuant to RAP 2.2(a)(3); however, she included in her ruling that the parties would be allowed to include arguments addressing the issue of appealability in their briefs to the panel.

ANALYSIS
¶ 5 As a preliminary matter, we address whether the Union's appeal was properly granted pursuant to RAP 2.2(a)(3). RAP 2.2(a)(3) states that a party may appeal "[a]ny written decision affecting a substantial right in a civil case which in effect determines the action and prevents a final judgment or discontinues the action."[1]
¶ 6 This court has held that motions to compel arbitration under RCW 7.04.010 are appealable under RAP 2.2(a)(3).[2] However, RCW 7.04.010 expressly states that "provisions of this chapter shall not apply to any arbitration agreement between employers and employees or between employers and associations of employees. . . ."[3] The agreement at issue here is an employment agreement.
¶ 7 In our previous decisions we determined:
A court decision that discontinues an "action" for arbitration falls within the meaning of RAP 2.2(a)(3) because it involves issues wholly separate from the merits of the dispute and because an effective challenge to the order is not possible without an interlocutory appeal.[4]
The District argues that these decisions are inapposite because they involved actions under RCW 7.04.010. However, the reasoning behind these decisions are equally applicable to the case at bar.
¶ 8 First, while it is true that the special proceedings under RCW 7.04.040 would not be invoked by a motion to compel arbitration *1249 because this case involves an employment agreement, it is also true that the proceedings contemplated under the grievance arbitration agreement between the Union and the District would be discontinued by a court's decision that the arbitration agreement was inapplicable. Second, the action to compel arbitration is wholly separate from the merits of the grievance. And third, the benefits of arbitration would be irretrievably lost without an interlocutory right to appeal. As we have stated before:
If a trial court does not compel arbitration and there is no immediate right to appeal, the party seeking arbitration must proceed through costly and lengthy litigation before having the opportunity to appeal, by which time such an appeal is too late to be effective. . . . This result would frustrate strong public policy favoring arbitration as well as the parties' own arbitration agreement.[5]
The reasoning behind our prior decision is thus equally applicable to the case at bar and the Union's appeal is allowed to proceed.
¶ 9 Addressing the merits of the appeal, the issue squarely before this court is whether under RCW 41.56.470 a grievance arbitration procedure contained in an expired collective bargaining agreement remains in effect during the pendency of interest arbitration proceedings involving uniformed public employees?
¶ 10 Federal case law interpreting the National Labor Relations Act (NLRA) states that while grievance arbitration is part of the wages, hours and other conditions of employment that are subject to mandatory bargaining, it is not the kind of provision that survives the expiration of a collective bargaining agreement during a hiatus between agreements. Decisions of the Washington Public Employment Relations Commission (PERC) have followed this federal precedent in decisions interpreting the Public Employees Collective Bargaining Act (PECBA). However, the Union argues that the federal case law interpreting the NLRA should not apply to PECBA's statutory framework given PECBA's overriding policy disfavoring strikes by uniformed personnel and favoring the arbitration of disputes.[6] For this reason, the Union argues that the PERC cases were wrongly decided, and urges this court to come to the conclusion that grievance arbitration provisions of an expired CBA persist during the pendency of interest arbitration proceedings.
¶ 11 Title 41 RCW dictates the procedures for collective bargaining involving public employees and their employers. RCW 41.56.430 and the subsequent statutory sections control the procedures for collective bargaining involving uniformed public employees and their employers. The intent and purpose of these statutes relating to uniformed public employees
is to recognize that there exists a public policy in the state of Washington against strikes by uniformed personnel as a means of settling their labor disputes; that the uninterrupted and dedicated service of these classes of employees is vital to the welfare and public safety of the state of Washington; that to promote such dedicated and uninterrupted public service there should exist an effective and adequate alternative means of settling disputes.[7]
¶ 12 The statutes provide for negotiations to take place between the parties and if no agreement is reached, for the appointment of a mediator.[8] If an agreement is not reached following a reasonable period of time for negotiation and mediation, and the executive director of the public employment commission finds the parties remain at impasse, then the statute provides for the creation of an interest arbitration panel to resolve the dispute.[9] Importantly, RCW 41.56.470 provides:
During the pendency of the proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of *1250 either party without the consent of the other but a party may so consent without prejudice to his rights or position under chapter 131, Laws of 1973.[10]
¶ 13 Here, interest arbitration proceedings had commenced at the time the District had refused the Union's request to submit its medical insurance grievance to arbitration. Therefore, pursuant to RCW 41.56.470, the District was prohibited from unilaterally changing the existing hours, wages or other conditions of employment. If grievance arbitration was an existing condition of employment, it follows that the District was prohibited from refusing to submit to grievance arbitration during the pendency of the interest arbitration proceedings.
¶ 14 The terminology "wages, hours and other conditions of employment" comes from the NLRA, which defines collective bargaining as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment. . . ."[11] Similarly, PECBA defines collective bargaining as "the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions. . . ."[12] While "grievance procedures" are addressed separately from "personnel matters, including wages, hours and working conditions" in the definition of collective bargaining in PECBA, the federal cases interpreting the NLRA are in accord that "arrangements for arbitration of disputes are a term or condition of employment and a mandatory subject of bargaining."[13]
¶ 15 While under the federal cases interpreting the NLRA parties are prohibited from making unilateral changes to most mandatory subjects of bargaining during negotiations for a new contract;[14] the federal courts have held that some mandatory subjects of bargaining do not survive expiration of a CBA.[15] These subjects include union security and dues check-off provisions, and in recognition of the statutory right to strike under the NLRA, "no-strike clauses are excluded from the unilateral change doctrine, except to the extent other dispute resolution methods survive expiration of the agreement."[16]
¶ 16 Under the NLRA, arbitration clauses are also excluded from the prohibition on unilateral changes. The reasoning for this is discussed at length in Litton Financial Printing Division v. NLRB.[17] There the United States Supreme Court agreed with a NLRB decision in Hilton-Davis Chemical Company that stated the commitment to arbitrate is a "`voluntary surrender of the right of final decision which Congress . . . reserved to [the] parties. . . . [A]rbitration is, at bottom, a consensual surrender of the economic power which the parties are otherwise free to utilize.'"[18] The Court also reiterated the federal labor law principle that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration *1251 any dispute which he has not agreed so to submit.'"[19] In holding that arbitration clauses are excluded from the prohibition on unilateral changes the Court stated:
We think the Board's decision in Hilton-Davis Chemical Co[mpany] is both rational and consistent with the [NLRA]. The rule is grounded in the strong statutory principle, found in both the language of the NLRA and its drafting history, of consensual rather than compulsory arbitration. . . . The rule conforms with our statement that "[n]o obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." . . . We reaffirm today that under the NLRA arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of their agreement.[20]
¶ 17 The Court then went on to fashion a rule limiting the reach of grievance arbitration only to "disputes arising under the contract."[21] The Court went on to say:
A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.[22]
¶ 18 PERC decisions are consistent with the federal cases on this issue in its interpretation of PECBA. Grievance procedures are also a mandatory subject of bargaining under PECBA.[23] However, in Teamsters Local 313 v. Pierce County,[24] PERC has held that "[a]lthough a grievance procedure is a mandatory subject of bargaining, it is a different type of mandatory subject than are wages, hours or working conditions."[25] In this decision involving non-uniformed public employees under a prior version of PECBA, PERC explained:
The litany of "wages, hours and working conditions" denotes the areas of concern between bargaining unit members and employers. These mandatory subjects of bargaining must be maintained at status quo upon the expiration of the collective bargaining agreement[.]
. . . .
There are, however, certain other mandatory subjects which are frequently bargained between employers and unions, and incorporated in collective bargaining agreement, which expire when the collective bargaining agreement ends. These are clauses which establish the manner and the means whereby the employer will satisfy its statutory obligation to deal with the union as the exclusive bargaining representative during the life of the agreement and the way in which the union may enjoy its statutory privilege of representing the employees.[26]
PERC thus concluded:
On the balance, a public policy favoring the resolution of labor disputes through arbitration is not damaged by a finding that the provision for binding arbitration is a right which runs to the union, not to the individual employee. Thus, operating like a union security clause, binding arbitration expires when a collective bargaining agreement naturally terminates.[27]
*1252 Other PERC decisions that involved uniformed public employees have also held that "an arbitration clause does not survive contract expiration with regard to grievances arising after the expiration date," and "[t]he agreement to arbitrate survives the expiration of a collective bargaining agreement only with respect to causes of action which arose while the contract was in effect."[28]
¶ 19 While the District relies heavily on these PERC decisions, the Union urges this court to reconsider the issue. We decline the Union's invitation. First, this court gives great deference to PERC's expertise in interpreting labor relations law.[29] PERC has spoken on this issue and has held that in the context of uniformed public employees, including fire fighters, arbitration clauses do not survive the expiration of a collective bargaining agreement with regard to grievances arising after the expiration date.[30] Here, the grievance arose one year after the CBA expired. In our view, the Union has not presented us with sufficient cause to overrule established PERC precedent on this issue.
¶ 20 Second, when looking at the other statutory sections of PECBA, it is evident that had the Legislature wanted to extend grievance arbitration beyond the expiration of a CBA it knew how to do it, because it has made such provisions applicable in the case of non-uniformed personnel. For example, in the case of non-uniformed personnel RCW 41.56.123(1) states:
After the termination date of a collective bargaining agreement, all of the terms and conditions specified in the collective bargaining agreement shall remain in effect until the effective date of a subsequent agreement, not to exceed one year from the termination date stated in the agreement. Thereafter, the employer may unilaterally implement according to law.
This section, explicitly calling for the extension of all terms of the expired CBA, does not apply to uniformed personnel. In contrast, the provision specific to uniformed personnel, RCW 41.56.470, does not refer to "all of the terms" of an expired CBA, but rather, refers only to "existing wages, hours and other conditions of employment." And in RCW 41.56.030(4) "grievance procedures" are listed separately from "wages, hours and working conditions" within the definition of collective bargaining, indicating that "grievance procedures" are something different than the "existing wages, hours and other conditions of employment" listed in RCW 41.56.470. Had the Legislature intended to extend grievance procedures for uniformed personnel, it knew how to do so and chose not to.
¶ 21 In sum, we are unwilling to overrule established PERC precedent based on the Union's policy arguments and in light of other statutory provisions within PECBA indicating that the Legislature did not intend RCW 41.56.470 to mean what the Union would have it mean.
¶ 22 For the above reasons, we affirm.
WE CONCUR: SCHINDLER, A.C.J., and COX, J.
NOTES
[1] RAP 2.2(a)(3).
[2] See Stein v. Geonerco, Inc., 105 Wash.App. 41, 17 P.3d 1266 (2001); Herzog v. Foster & Marshall, Inc., 56 Wash.App. 437, 783 P.2d 1124 (1989).
[3] RCW 7.04.010.
[4] Stein, 105 Wash.App. at 44, 17 P.3d 1266 (citing Herzog, 56 Wash.App. at 440-41, 783 P.2d 1124).
[5] Stein, 105 Wash.App. at 44, 17 P.3d 1266 (citing Herzog, 56 Wash.App. at 443, 783 P.2d 1124).
[6] See RCW 41.56.430.
[7] RCW 41.56.430.
[8] RCW 41.56.440.
[9] RCW 41.56.450.
[10] RCW 41.56.470.
[11] 29 U.S.C. § 158(d).
[12] RCW 41.56.030(4).
[13] Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 199, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). See also, United Electrical, Radio and Machine Workers of America v. N.L.R.B., 409 F.2d 150, 156 (D.C.Cir.1969) ("A bargaining proposal is a mandatory subject of bargaining if it falls within the scope of `wages, hours, and other conditions of employment' under Section 8(d) [of the NLRA]. Although these categories are far from self-defining, the case law shows that grievance arbitration, and no-strike clauses are mandatory subjects for bargaining.").
[14] NLRB v. Katz, 369 U.S. 736, 743, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).
[15] Litton, 501 U.S. at 199, 111 S.Ct. 2215.
[16] Litton, 501 U.S. at 199, 111 S.Ct. 2215 (citing 29 U.S.C. §§ 158(d)(4), 163 (union's statutory right to strike) and Southwestern Steel & Supply v. NLRB, 257 U.S.App. D.C. 19, 23, 806 F.2d 1111, 1114 (1986)).
[17] Litton, 501 U.S. at 199-201, 111 S.Ct. 2215.
[18] Litton, 501 U.S. at 199-200, 111 S.Ct. 2215 (quoting Hilton Davis Chem. Co., 185 NLRB 241, 242, 1970 WL 25333 (1970)).
[19] Litton, 501 U.S. at 200, 111 S.Ct. 2215 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).
[20] Litton, 501 U.S. at 200-01, 111 S.Ct. 2215 (quoting Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974) (citations omitted)).
[21] Litton, 501 U.S. at 205, 111 S.Ct. 2215.
[22] Litton, 501 U.S. at 205-06, 111 S.Ct. 2215.
[23] See RCW 41.56.030(4).
[24] Teamsters, Local 313 v. Pierce County, Pub. Empl. Relations Comm'n Dec. 2693 PECB (1987).
[25] Teamsters, Pub. Empl. Relations Comm'n Dec. 2693, at 11, PECB (1987).
[26] Teamsters, Pub. Empl. Relations Comm'n Dec. 2693, at 12, PECB (1987).
[27] Teamsters, Pub. Empl. Relations Comm'n Dec. 2693, at 22, PECB (1987).
[28] Enumclaw Police Officers Ass'n v. City of Enumclaw, Pub. Empl. Relations Comm'n Dec. 4897, at 2, PECB (1994); IFPTE Local 469 v. City of Yakima, Pub. Empl. Relations Comm'n Dec. 3880, at 8, PECB (1991) (emphasis in original).
[29] Bellevue v. Int'l Ass'n of Fire Fighters, 119 Wash.2d 373, 381, 831 P.2d 738 (1992)("Because of the expertise of PERC's members in labor relations, . . . the courts of this state give `great deference' to PERC's decisions and interpretation of the collective bargaining statutes.").
[30] Enumclaw Police Officers Ass'n v. City of Enumclaw, Pub. Empl. Relations Comm'n Dec. 4897 PECB (1994); IFPTE Local 469 v. City of Yakima, Pub. Empl. Relations Comm'n Dec. 3880 PECB (1991).