[No. 42435-5-II.    Division Two.    February 12, 2013.]

SNOHOMISH COUNTY PUBLIC TRANSPORTATION BENEFIT AREA, *Appellant*, v. THE PUBLIC EMPLOYMENT RELATIONS COMMISSION ET AL., *Respondents*.

*Shannon E. Phillips* and *Sofia D. Mabee* (of *Summit Law Group PLLC*), for appellant.

*Robert W. Ferguson*, *Attorney General*, and *Spencer W. Daniels*, *Assistant*, for respondent Public Employment Relations Commission.

*Michael C. Subit* and *Clifford Freed* (of *Frank Freed Subit & Thomas LLP*), for respondent Amalgamated Transit Union, Local 1576.

¶1 WORSWICK, C.J. — Under Washington's Administrative Procedure Act (APA),[1] agencies have discretion whether to issue decisions through adjudication or rule making. But the APA limits the scope of an adjudicative order to one that determines the rights, duties, privileges, or other legal interests of specific persons. Hence, an adjudicative order cannot be used to promulgate a new, purely prospective rule or policy.

¶2 Here, the Public Employment Relations Commission (PERC) entered an adjudicative order dismissing an unfair labor practice complaint by Amalgamated Transit Union, Local 1576 against the Snohomish County Public Transit Benefit Area, d/b/a Community Transit. Amalgamated's complaint alleged that Community Transit improperly failed to arbitrate employee grievances under the employee grievance arbitration provisions of an expired collective bargaining agreement. PERC, following established precedent that provisions for the arbitration of employee grievances do not survive a collective bargaining agreement, dismissed Amalgamated's complaint. But it also announced a new, purely prospective rule that provisions for the arbitration of employee grievances would survive the expiration of *future* collective bargaining agreements.

¶3 Community Transit seeks judicial review,[2] arguing that PERC's decision was invalid because it was decided

---

[1] Ch. 34.05 RCW.

[2] Community Transit's petition for review named both Amalgamated and PERC as respondents. PERC initially declined to participate in judicial review, leaving Amalgamated as the sole respondent before this court. But PERC submitted a brief regarding the agency's authority to issue prospective adjudicative orders in response to our request for additional briefing, as set forth in further detail below at note 6.

after an adjudicative proceeding rather than a rule making proceeding, and arguing that the decision exceeded PERC's authority.[3] Amalgamated argues that while Community Transit has standing to challenge PERC's failure to follow rule making procedures, Community Transit lacks standing to challenge PERC's decision on the merits. Amalgamated further argues that, assuming PERC exceeded its authority by issuing a purely prospective adjudicative order, we should amend the order and apply PERC's new precedent to Community Transit.

¶4 We hold that Community Transit has standing to contest PERC's decision on both procedural and substantive grounds. And because PERC's new prospective rule did not determine the rights of specific persons, it exceeded PERC's adjudicative authority. We remand to PERC with instructions to strike the prospective change in precedent from its order.

## FACTS

### A. *Legal Background*

¶5 This case involves a dispute over Amalgamated's members' right to labor arbitration after their collective bargaining agreement expires. Labor arbitration comes in two forms: grievance arbitration and interest arbitration.

¶6 Grievance arbitration is a process for resolving employee claims that the employer has violated the collective bargaining agreement. *See Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 46-47, 42 P.3d 1265 (2002). Grievance arbitration is available only if included in a collective bargaining agreement. *See Teamsters, Local 313 v. Pierce County*, No. 2693, at 15-16, Wash. Pub. Emp't Relations Comm'n (May 29, 1987).

---

[3] Community Transit also argues (1) PERC erroneously interpreted and applied the law, (2) PERC acted inconsistently with a rule of the agency without a rational basis, and (3) PERC's decision was arbitrary and capricious. Because we resolve this case on PERC's authority, we do not address these arguments.

¶7 Interest arbitration is a process whereby if the union and the employer cannot agree on a new contract during collective bargaining, an arbitration panel will be formed to resolve any disputes over the terms of the new contract. RCW 41.56.450; *Local 46*, 146 Wn.2d at 46. Unlike grievance arbitration, interest arbitration is not a matter of contract. Instead, it is made available to certain public employees by statute, including the transit employees that Amalgamated represents. RCW 41.56.450, .492.

¶8 It has long been the rule that for employees eligible for interest arbitration, grievance arbitration provisions do not survive the expiration of a collective bargaining agreement. *See Maple Valley Prof'l Fire Fighters Local 3062 v. King County Fire Prot. Dist. No. 43*, 135 Wn. App. 749, 757-59, 145 P.3d 1247 (2006); *Teamsters, Local 313*, No. 2693, at 17. But in this case, while following this longstanding rule with respect to the parties before it, PERC prospectively announced a new rule that grievance arbitration provisions would survive the expiration of future collective bargaining agreements for employees eligible for interest arbitration.

### B. *Procedural Facts*

¶9 Amalgamated's collective bargaining agreement with Community Transit expired on December 31, 2007. That collective bargaining agreement included a grievance arbitration provision. In 2008, while the parties were bargaining over a new agreement, Community Transit announced that it would no longer arbitrate employee grievances that arose after the previous agreement's expiration. Amalgamated instituted adjudication by filing an unfair labor practice complaint with PERC, alleging that Community Transit was required to arbitrate all employee grievances.

¶10 A PERC unfair labor practice manager, following established precedent, ruled that the grievance arbitration provisions expired with the collective bargaining agreement and accordingly dismissed Amalgamated's complaint. Amalgamated appealed this decision to PERC.

¶11 In a written decision, two of PERC's three commission members recognized that under existing precedent, the grievance arbitration provisions had expired along with the collective bargaining agreement that contained them. But the majority overruled existing precedent and held that such provisions would, *in the future*, survive a collective bargaining agreement's expiration for employees eligible for interest arbitration. Because Community Transit relied on past precedent when it refused to arbitrate grievances, PERC affirmed the dismissal of Amalgamated's complaint and held that the new standard would apply only prospectively.[4]

¶12 In spite of prevailing on Amalgamated's unfair labor practice complaint, Community Transit petitioned for judicial review of PERC's decision in superior court, contesting the validity of PERC's new, prospectively applied standard. The superior court affirmed PERC's decision, holding that PERC had properly decided the case without following rule making procedures and that Community Transit lacked standing to challenge PERC's new standard on its merits. Community Transit now appeals to this court.

## ANALYSIS

### I. STANDING

¶13 As a threshold matter, although Amalgamated concedes that Community Transit has standing to challenge PERC's failure to follow rule making procedures, Amalgamated argues that Community Transit lacks standing to challenge PERC's decision on its merits. Although we do not

---

[4] PERC held:

When this employer declined to arbitrate the post-expiration grievance, the employer relied upon what was then valid agency precedent. Although we have re-examined and overruled existing agency precedent and have adopted a new standard, we cannot apply that standard to this complaint. Our decision must be prospective in nature, and the union's complaint is dismissed.

Clerk's Papers at 24.

decide this case based on PERC's failure to follow rule making procedures, we accept Amalgamated's concession that Community Transit has standing to raise the issue. We further hold that Community Transit has standing to challenge PERC's decision on its merits.

¶14 The APA provides for judicial review of most agency actions. RCW 34.05.510-.598. But only "aggrieved or adversely affected" persons have standing to obtain judicial review of agency action. RCW 34.05.530. The person seeking judicial review of agency action bears the burden of establishing standing to obtain judicial review. *KS Tacoma Holdings, LLC v. Shorelines Hearings Bd.*, 166 Wn. App. 117, 127, 272 P.3d 876 (2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). We review questions of standing de novo. *Spokane Airports v. RMA, Inc.*, 149 Wn. App. 930, 939, 206 P.3d 364 (2009).

¶15 A person is "aggrieved or adversely affected" by agency action under RCW 34.05.530 when:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

Our Supreme Court has held that these statutory requirements are derived from federal case law. *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 793, 920 P.2d 581 (1996) (*Trades Council*). The first and third factors are equivalent to the federal injury-in-fact test, while the second factor is equivalent to the federal "zone of interest" test. *See Trades Council*, 129 Wn.2d at 793-95.

¶16 The parties do not contest whether Community Transit satisfies the zone of interest test, and thus we do

not address it. But Amalgamated argues that Community Transit fails the injury-in-fact test. We disagree.

¶17 Washington courts interpret the injury-in-fact test consistently with federal case law. *See, e.g., KS Tacoma Holdings*, 166 Wn. App. at 126-27. To meet this test, Community Transit must show an injury-in-fact, which is an invasion of a legally protected interest. *Lujan*, 504 U.S. at 560.

¶18 Community Transit's claimed injury-in-fact is that PERC's decision will cause it to suffer a loss of "negotiating leverage." Br. of Appellant at 40. This argument is well taken. Prior to PERC's decision here, if Amalgamated wished for its members to benefit from grievance arbitration provisions after the expiration of its collective bargaining agreement, it was required to negotiate with Community Transit for such a benefit. But under PERC's decision, Community Transit can no longer obtain concessions in exchange for an agreement to continue the arbitration of grievances past the collective bargaining agreement's expiration; its negotiating leverage has been reduced.

¶19 The United States Supreme Court's holding in *Clinton v. City of New York*, 524 U.S. 417, 432, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998), bolsters our conclusion that Community Transit has suffered an injury-in-fact. In *Clinton*, a farmers' cooperative challenged the Line Item Veto Act[5] after President Clinton vetoed a tax code provision that allowed food refiners and processors to defer taxes when selling their stock to farmers' cooperatives. 524 U.S. at 420-21, 424-25. The Court recognized that the vetoed provision gave farmers a "bargaining chip" that facilitated the purchase of food processing facilities. 524 U.S. at 432. Because the president's exercise of the line-item veto deprived the cooperative of this "statutory bargaining chip," the president's veto "inflicted a sufficient likelihood of economic injury to establish standing." 524 U.S. at 432.

---

[5] Former 2 U.S.C. §§ 691-692 (1996).

¶20 By analogy, if the farmers' cooperative suffered an injury-in-fact when it lost a "bargaining chip" that helped it purchase certain assets, an employer suffers an injury-in-fact when it loses the benefit of a rule that affects its negotiating leverage with unions. This loss of leverage is a "sufficient likelihood of economic injury." 524 U.S. at 432; *see also Hatmaker v. Ga. Dep't of Transp.*, 973 F. Supp. 1047, 1051 (M.D. Ga. 1995) (order granting preliminary injunction) ("Economic losses, such as harm to competitive positioning in a commercial market *or diminished bargaining power* with a landlord, have consistently been recognized as injuries sufficient to establish standing." (emphasis added)). Community Transit has accordingly shown an injury-in-fact and has established standing to challenge PERC's decision on the merits.

## II. PERC's Authority

¶21 Community Transit argues that PERC's decision was invalid because it used adjudication proceedings instead of rule making proceedings to promulgate a purely prospective rule. We agree that the prospective nature of PERC's decision rendered it invalid, but on alternate grounds.[6] We hold as a matter of first impression in Washington that PERC exceeded its authority under the APA by purporting to issue an adjudicative order with only prospective effect.[7]

---

[6] After oral argument, we asked the parties to supply additional briefing on whether the APA grants PERC the authority to issue a prospective adjudicative order. Amalgamated and Community Transit both submitted additional briefing on this issue. Additionally, we granted PERC's motion for leave to file a brief addressing its authority to issue prospective adjudicative orders under the APA. PERC accordingly filed a brief addressing the issue.

[7] Community Transit also argues that PERC exceeded its authority on different grounds: (1) that PERC exceeded its authority by creating a new unfair labor practice, (2) that PERC exceeded its authority by purporting to overrule judicial precedent, and (3) that PERC exceeded its authority by undermining the legislature's intent. Because we resolve this case based on PERC's lack of authority under the APA to issue a purely prospective adjudicative order, we do not address these arguments.

¶22 The text of the APA defines an "adjudicative order" as "a written statement of particular applicability that finally determines the legal rights, duties, privileges, immunities, or other legal interests of a specific person or persons." RCW 34.05.010(11)(a). While the United States Supreme Court has largely left the decision of whether to use rule making or adjudication to federal agencies, Washington's APA is considerably narrower than the federal APA[8] when it comes to the scope of adjudication. Thus, in contrast to federal agencies, Washington agencies lack authority to issue purely prospective adjudicative orders. We accordingly hold that PERC exceeded its authority by purporting to issue a purely prospective adjudicative order here.

A. *The Plain Text of the Washington APA Precludes Purely Prospective Adjudicative Orders*

¶23 PERC's authority is limited to that which the legislature has granted. *Local 2916, IAFF v. Pub. Emp't Relations Comm'n*, 128 Wn.2d 375, 379, 907 P.2d 1204 (1995). The question of PERC's authority is thus a question of law. *Local 2916, IAFF*, 128 Wn.2d at 379. Courts will grant relief from an agency order in an adjudicative proceeding if the order exceeds the agency's authority. RCW 34.05.570(3)(b).

¶24 The legislature has granted PERC the authority to adjudicate unfair labor practice complaints and to issue rules and regulations to carry out the provisions of the public employee collective bargaining statutes. RCW 41.56-.160; RCW 41.58.050. PERC must exercise this authority in accord with the APA. RCW 41.56.165; RCW 41.58.050.

¶25 Examining PERC's authority here thus presents a question regarding the agency's authority under the APA, a matter of statutory interpretation, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our fundamental objective in statutory interpretation is to give effect to the legislature's

[8] 5 U.S.C. §§ 551-559.

intent. *Campbell & Gwinn*, 146 Wn.2d at 9. If a statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004).

¶26 The APA provides two primary sets of proceedings for agency action: adjudication and rule making. RCW 34-.05.310-.395, .410-.494. Rule making requires agencies to give public notice of proposed rules and allow for public comment. RCW 34.05.320, .325.

¶27 In contrast to rule making, agencies are not required to give public notice of adjudicative proceedings or to allow for public comment. *See* RCW 34.05.434. The APA defines an "adjudicative proceeding" as one where an opportunity for a hearing is required "before or after the entry of an order by the agency." RCW 34.05.010(1). " 'Order,' without further qualification, means a written statement of particular applicability that finally determines the legal rights, duties, privileges, immunities, or other legal interests *of a specific person or persons*." RCW 34.05.010(11)(a) (emphasis added).[9]

¶28 At the outset, the definition of "order" in the APA plainly limits adjudication to resolving the rights and duties of specific persons, rather than announcing general policies of a purely prospective nature. The plain text of RCW 34.05.010(11)(a) does not confer on agencies authority to decide rules in adjudication that apply to everyone *except* the specific persons before the agency, as PERC did here.

¶29 Both PERC and Amalgamated point out that here, PERC *did* decide the rights and duties of specific parties: it decided that Community Transit did not commit an unfair labor practice against Amalgamated. And consequently, PERC and Amalgamated argue that nothing in the APA

---

[9] The statute defines "person" to mean "any individual, partnership, corporation, association, governmental subdivision or unit thereof, or public or private organization or entity of any character, and includes another agency." RCW 34.05.010(14).

barred PERC from issuing a simultaneous decision that decided the legal rights and duties of *all other* parties.[10] But this argument assumes that agencies may exercise a power simply because they have not been forbidden to do so. Such a view is inconsistent with the limited authority of Washington agencies.

¶30 Washington agencies are limited to the authority that the legislature has granted. *Local 2916, IAFF*, 128 Wn.2d at 379. Because RCW 34.05.010(11)(a) does not authorize agencies to determine the rights and duties of persons in general via adjudication, they lack such authority. Agencies do not, as PERC and Amalgamated argue, have such authority by virtue of it not being expressly forbidden to them.[11]

¶31 PERC also argues that adjudicative orders, being precedential, *always* bind persons other than the specific persons before the agency, making it irrelevant whether they are purely prospective. But this is incorrect. Adjudication decides matters on a case-by-case basis. While

---

[10] Amalgamated also apparently argues that the words "specific persons" can validly refer to "all uniformed public sector employers and unions who were parties to expired collective agreements under which a matter previously amenable to grievance-arbitration arose post-expiration." Corrected Suppl. Br. of Resp't (Amalgamated) at 4-5. We disagree. Amalgamated refers not to specific persons, but to a *class* of persons.

[11] This is not to say that agencies are always limited to the authority *expressly* granted to them by statute. We have recognized that agencies are impliedly granted the authority to do what is necessary in order to carry out their statutorily delegated authority. *Irondale Cmty. Action Neighbors v. W. Wash. Growth Mgmt. Hearings Bd.*, 163 Wn. App. 513, 527, 262 P.3d 81 (2011), *review denied,* 173 Wn.2d 1014 (2012). But the record here demonstrates no necessity for PERC to exercise the power to issue prospective adjudicative orders. PERC had authority to apply its new standard to the specific parties before it, satisfying RCW 34.05.010(11)(a). And PERC also had authority to enact the new standard via rule making. RCW 41.58.050.

PERC contends that it would be "difficult, if not impossible" to set forth "all the circumstances that might constitute an unfair labor practice" using rule making, but nothing in our opinion requires as much. Br. of Resp't (PERC) at 3. PERC may decide all such questions via adjudication; it is simply limited to determining the rights of specific persons when doing so. PERC need use rule making only for those instances where it finds that purely prospective effect is required. Nothing in the record supports PERC's assertion that this would be "difficult, if not impossible." Br. of Resp't (PERC) at 3.

potentially precedential, adjudication does not necessarily decide the rights or duties of nonparties. As with case law, a party may attempt to distinguish a previous adjudication by showing that it was decided under distinguishable facts, or it may argue that the decision was erroneous and should be reconsidered. *See* RCW 34.05.570(3) (requiring invalidation of adjudicative orders that, inter alia, misinterpret or misapply the law, exceed the agency's authority, or violate the agency's own rules). Thus, an adjudication determining the rights and duties of specific persons does not automatically determine the rights and duties of all other persons.

¶32 PERC and Amalgamated additionally argue that just like Washington courts, PERC has authority to issue purely prospective decisions. *See Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 285, 208 P.3d 1092 (2009). But unlike courts, which are granted the "judicial power of the state" by the Washington Constitution, CONST. art. IV, § 1, agencies are limited to the powers the legislature has granted them. *Local 2916, IAFF*, 128 Wn.2d at 379. Because PERC is bound by RCW 34.05.010(11)(a), analogy to the authority of courts is unavailing.

¶33 Because the plain text of the APA limits adjudicative orders to those determining the rights, duties, privileges, or other legal interests of specific persons, a purely prospective adjudicative order is beyond the authority granted by RCW 34.05.010(11)(a). This point becomes clearer by contrast with the federal APA and the accompanying case law, which provide no such limitation on agency authority.

B.  *The Federal APA and Cases Thereon Illustrate by Contrast the Limited Scope of Adjudicative Orders under the Washington APA*

¶34 Amalgamated, Community Transit, and PERC all cite federal cases to argue PERC's authority to issue a prospective ruling, but because the text of the federal APA

is materially different from the Washington APA, these cases are inapposite. The federal APA gives federal agencies broader adjudicative authority, and the United States Supreme Court has ultimately left the decision whether to proceed via rule making or adjudication to such agencies. But the narrower scope of adjudicative orders under the Washington APA does not justify the same approach as to Washington agencies.

### 1. *The Federal APA Defines "Adjudication" Broadly*

¶35 The federal APA defines "rule making" as "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). And it defines "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4).

¶36 The federal APA's definition of "adjudication" is similarly broad. It defines "adjudication" as "agency process for the formulation of an order." 5 U.S.C. § 551(7). And it defines an "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). In other words, the federal APA essentially defines "adjudication" as anything that is not rule making. And it defines "rule making" so broadly that the text of the federal APA does not appear to require that any particular proceeding (other than licensing) be conducted under one set of procedures or another.

### 2. *The Supreme Court Gives Federal Agencies Discretion To Choose Adjudication or Rule Making*

¶37 Although the United States Supreme Court has previously signaled the intent to police the boundary between adjudication and rule making, the modern Court has

abandoned any attempt to do so, leaving the choice between adjudication and rule making to federal agencies. *Compare Nat'l Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 765, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969) (holding that an adjudicative order could properly apply only to parties before the agency) (plurality opinion), *with Nat'l Labor Relations Bd. v. Bell Aerospace Co., Div. of Textron, Inc.*, 416 U.S. 267, 294, 94 S. Ct. 1757, 40 L. Ed. 2d 134 (1974) (holding that choice between adjudication and rule making lies in first instance within agency's discretion). *See generally* 1 RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 6.9, at 510 (5th ed. 2010) ("[T]he Court's unanimous opinion on the rulemaking-adjudication issue in *Bell Aerospace* . . . must be taken as a flat rejection of any judicial attempt to constrain agencies from developing 'rules' through the adjudicatory process.").

¶38 The Court's refusal to police the line between adjudication and rule making under the federal APA is reflected in National Labor Relations Board (NLRB) precedent. The NLRB routinely gives new rules decided in adjudication only prospective effect. *See, e.g., Dana Corp.*, 351 N.L.R.B. 434, 443 (2007), *overruled on other grounds by Lamons Gasket Co.*, 357 N.L.R.B. No. 72 (2011); *Crown Bolt, Inc.*, 343 N.L.R.B. 776, 780 (2004); *Levitz Furniture Co. of the Pac.*, 333 N.L.R.B. 717, 729 (2001). Such a practice is easily justified by the very broad definitions of "adjudication" and "rule making" under the federal APA.

3. *The Narrower Definition of "Adjudication" under the Washington APA Shows that Washington Agencies Lack Authority To Issue Prospective Adjudicative Orders*

¶39 While the Supreme Court has allowed federal agencies free reign to issue purely prospective adjudicative orders under the federal APA, such a result is not appropriate under the much narrower definition of "adjudication" under the Washington APA. Because the Washington APA

limits adjudicative orders to those deciding the rights, duties, privileges, or other legal interests of *specific persons*, RCW 34.05.010(11)(a), where the federal APA does not, 5 U.S.C. § 551(6), we conclude that unlike the federal APA, the Washington APA forbids agencies to issue adjudicative orders with only prospective effect. Consequently, PERC exceeded its authority by deciding the instant case with an adjudicative order that purported to determine the legal rights of every union and employer *except* the specific persons before the agency.[12]

### III. REMEDY

¶40 Finally, Amalgamated argues that, assuming PERC exceeded its authority, we should amend PERC's order to apply PERC's new standard to Community Transit. But this remedy is improper. The APA directs us to "grant relief" from an agency order if it exceeds the agency's authority. RCW 34.05.570(3)(b). Nothing in the plain meaning of the words "grant relief" permits us to amend invalid agency action in order to preserve its validity. In accord with RCW 34.05.570(3)(b), we must order the invalid agency action, the portion of the adjudicative order that purports to apply only prospectively, stricken.

¶41 We remand to PERC with instructions to strike the prospective change in precedent from its order.

HUNT and VAN DEREN, JJ., concur.

---

[12] Community Transit concedes that agencies may use adjudication to set administrative policy on a case-by-case basis, arguing that it was the prospective nature of PERC's decision here that rendered it invalid, rather than PERC's decision to alter existing precedent. We agree. Our Supreme Court has cautioned that "the APA's provisions were not designed to serve as the straitjacket of administrative action." *Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 898, 31 P.3d 1174 (2001). We accordingly make clear that our invalidation of PERC's order here is based on the prospective nature of the order, not the fact that PERC used adjudication to effect a change in agency policy.