# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington nonprofit organization, | No. 53889-0-II |
| Appellant , | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE PUBLIC DISCLOSURE COMMISSION, a State of Washington government agency, and SERVICE EMPLOYEES INTERNATIONAL UNION POLITICAL EDUCATION & ACTION FUND, an IRS 527 political committee, | |
| Respondent. | |

MAXA, J. – The Freedom Foundation (Foundation) filed an administrative complaint with the Washington State Public Disclosure Commission (PDC), alleging that Service Employees International Union Political Education and Action Fund (SEIU PEAF) had violated the Fair Campaign Practices Act (FCPA), chapter 42.17A RCW.  The PDC dismissed the Foundation's complaint and issued a warning letter to SEIU PEAF.

The Foundation filed a petition for judicial review under the Administrative Procedures Act (APA), chapter 34.05 RCW, challenging the PDC's dismissal of its complaint regarding SEIU PEAF.  The superior court dismissed the Foundation's petition under CR 12(b)(6) based on a lack of standing.  The Foundation appeals the superior court's dismissal of its petition.

We follow this court's recent decision in *Freedom Foundation v. Bethel School District*, 14 Wn. App. 2d 75, 469 P.3d 364 (2020), *review denied,* 478 P.3d 83 (2021), which addressed the same standing issue and concluded that the Foundation did not have standing to seek judicial review of the PDC's dismissal of its complaint to the PDC. Accordingly, we affirm the superior court's order dismissing the Foundation's petition for judicial review.

FACTS

SEIU PEAF is registered as an out-of-state political committee with the PDC. Since August 2004, SEIU PEAF has filed form C5 reports with the PDC to report contributions or expenditures to or on behalf of Washington candidates or political committees.

In February 2019, the Foundation filed a complaint with the PDC alleging that SEIU PEAF had failed to timely and accurately file its C5 reports in violation of an FCPA provision, RCW 42.17A.250. RCW 42.17A.250 sets forth the campaign finance requirements for out-of-state political committees. SEIU PEAF responded to the allegations against it, conceding inadvertent errors on at least four occasions regarding its C5 reports.

The PDC reviewed the complaint, the PDC contribution and expenditure database for SEIU PEAF activities, the C5 forms and amended C5 forms filed by SEIU PEAF, and the response to the complaint filed by SEIU PEAF.

In May, the PDC sent a letter to the Foundation responding to the Foundation's complaint regarding SEIU PEAF. The letter outlined the PDC's findings regarding the Foundation's allegation, and stated that the facts did not amount to an actual violation warranting further investigation. The letter further stated that the PDC would be formally warning SEIU PEAF regarding the importance of filing timely and accurate C-5 reports. The letter concluded by stating that the PDC was dismissing the Foundation's remaining allegations against SEIU PEAF.

The Foundation filed a petition for judicial review of the PDC's decision to dismiss the Foundation's complaint to the PDC regarding SEIU PEAF's conduct. The PDC filed a motion to dismiss under CR 12(b)(6), arguing that the Foundation lacked standing to seek judicial review under the APA. The superior court granted the PDC's motion to dismiss.

The Foundation appeals the superior court's order dismissing the petition for judicial review.

## ANALYSIS

### A.    STANDARD OF REVIEW – CR 12(b)(6)

We review de novo a trial court's ruling on a CR 12(b)(6) motion to dismiss. *Wash. Trucking Ass'n v. Emp't Sec. Dep't*, 188 Wn.2d 198, 207, 393 P.3d 761 (2017). Dismissal is appropriate where it appears beyond doubt that a plaintiff will be unable to prove any set of facts that would justify recovery. *Id.* We assume the truth of the allegations in the plaintiff's complaint and may consider hypothetical facts not included in the record. *Id.*

### B.    STANDING FOR JUDICIAL REVIEW UNDER THE APA

The Foundation argues that it can seek judicial review under the APA based on both (1) individual standing and (2) associational standing on behalf of its members. We disagree.

#### 1.    Legal Principles

We review standing de novo. *City of Burlington v. Wash. State Liquor Control Bd.*, 187 Wn. App. 853, 861, 351 P.3d 875 (2015). A person has standing to obtain judicial review of an agency action under the APA if that person is aggrieved or adversely affected by the agency action. RCW 34.05.530. A person is aggrieved or adversely affected only when three conditions are present:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

RCW 34.05.530. The first and third conditions together are the "injury-in-fact" requirements, and the second condition is the "zone of interest" requirement. *Freedom Foundation*, 14 Wn. App. 2d at 86. All three conditions must be present for a person to have standing. *Id.* The person challenging the agency action has the burden to prove standing. *Id.*

The "injury in fact" element requires the petitioner to show that the agency decision caused some specific and perceptible harm. *Id.* There must be an invasion of a legally protected interest. *Snohomish County Pub. Transp. Benefit Area v. Public Emp't Relations Comm'n*, 173 Wn. App. 504, 513, 294 P.3d 803 (2013). And "[c]onjectural or hypothetical injuries are insufficient to confer standing." *Freedom Foundation*, 14 Wn. App. 2d at 86. Finally, the petitioner must show that a favorable decision likely – not merely speculatively – will redress the injury. *Patterson v. Segale*, 171 Wn. App. 251, 259, 289 P.3d 657 (2012).

The "zone of interest" requirement "limits judicial review of an agency action to litigants with a viable interest at stake, rather than individuals with only an attenuated interest in the agency action." *City of Burlington*, 187 Wn. App. at 862. This requirement asks whether the legislature intended the agency to consider the petitioner's interests when taking the challenged action. *Id.* at 863.

An organization that otherwise does not have individual standing may have associational standing on behalf of its members. Associational standing is established when (1) the members of the organization otherwise would have standing to sue in their own right, (2) the interests that the organization seeks to protect are germane to its purpose, and (3) neither the claim nor the

relief requires the participation of the organization's individual members. *Wash. State Nurses Ass'n v. Cmty. Health Sys., Inc.*, 196 Wn.2d 409, 415, 469 P.3d 300 (2020). The first two prongs are constitutional, but the third prong is judicially created for administrative convenience and efficiency. *Id.*

2.    Individual Standing – Injury-in-Fact Requirement

The Foundation argues that the PDC's dismissal of its complaint against SEIU PEAF caused injury-in-fact because (1) it was a party to the PDC complaint; and (2) it suffered a competitive harm to its interests as a result of SEIU PEAF's FCPA violations. We disagree.[1]

a.    The Foundation's Complainant Status

The Foundation argues that the PDC's dismissal of its complaint against SEIU PEAF necessarily caused prejudice because it was a party to that complaint. This court rejected an identical argument in *Freedom Foundation*, 14 Wn. App. 2d at 87-88. We follow *Freedom Foundation*.

In *Freedom Foundation*, the Foundation filed a PDC complaint against a school district regarding its processing of payroll deductions. *Id.* at 79. The PDC found that the evidence did not support a violation and closed the matter. *Id.* The Foundation sought judicial review under the APA. *Id.* The Foundation argued that it had standing to seek judicial review because it was a party to the PDC complaint. *Id.* at 85.

First, the court referenced WAC 390-37-030(1), which states, "When a complaint is filed with the PDC other than by PDC staff pursuant to WAC 390-37-040, neither the complainant nor any other person shall have special standing to participate or intervene in any investigation or

---

[1] Because we hold that the Foundation cannot satisfy the injury-in-fact requirement, we do not address the zone of interest requirement.

5

consideration of the complaint by the commission or its staff." The court stated, "The FCPA does not confer standing on a complainant, and a complainant does not have the ability to participate in any proceeding unless requested by the PDC." *Freedom Foundation*, 14 Wn. App. 2d at 87.

Second, the court referenced RCW 34.05.010(12), which states that under the APA, a party to an agency proceeding is "(a) A person to whom the agency action is specifically directed; or (b) A person named as a party to the agency proceeding or allowed to intervene or participate as a party in the agency proceeding." RCW 34.05.010(12). The court stated:

> Freedom Foundation was not a party to the PDC complaint. The PDC action was not specifically directed toward Freedom Foundation, and it was not named or allowed to intervene as a party in any PDC proceeding. Rather, Freedom Foundation retained the status of a complainant and submitted documentary evidence to the PDC during its preliminary investigation. Because Freedom Foundation was not a party to the complaint, it fails to show how its complainant status resulted in a specific and perceptible harm when the PDC denied its complaint.

*Freedom Foundation* at 87-88.

The Foundation relies on this court's unpublished decision in *Automotive United Trades Organization v. Washington Public Disclosure Commission*, No. 50652-1-II, (unpublished) (Wash. Ct. App. May, 14, 2019) [*AUTO*], http://www.courts.wa.gov/opinions/pdf/D2%2050652-1-II%20Unpublished%20Opinion.pdf. In that case, the PDC declined to take action on AUTO's citizen action notice and issue a decision letter. *Id.* at 1. AUTO filed a petition for judicial review more than 30 days after the PDC's decision, which was beyond the APA's appeal deadline. *Id.* at 3. However, AUTO argued that the deadline was extended because it did not realize that the decision would result in prejudice until later and therefore it did not have standing to seek judicial review until that time. *Id.* at 4. This court rejected this argument because AUTO

should have known that the decision letter would cause it "specific and perceptible harm," and therefore held that AUTO's petition for review was untimely. *Id.* at 5.

The Foundation argues that *AUTO* is directly on point, and stands for the proposition that a complainant suffers specific and perceptible harm when the PDC dismisses a complaint. But this court rejected this argument in *Freedom Foundation*:

> But in *AUTO* we did not consider whether a complainant had standing to petition for review. Rather, we held that the complainant failed to timely file its petition for review, thus, the complainant was time-barred from filing the action. *AUTO* did not consider the question presented in this case.

14 Wn. App. 2d at 88.

Accordingly, we reject the Foundation's first argument regarding injury-in-fact and conclude that the Foundation's status as a complainant does not confer standing.

b.    Competitive Harm

The Foundation argues that it can satisfy the injury-in-fact requirement because it suffered "competitive harm" in that SEIU PEAF's FCPA violations frustrated the Foundation's interest in assuring enforcement of the FCPA's policies. The Foundation also claims that competitive harm will result because in the future union-affiliated entities who the Foundation routinely opposes will be able to cite to the PDC's decision.

This court in *Freedom Foundation* rejected the same argument. 14 Wn. App. 2d at 88-89. The court stated:

> Here, Freedom Foundation cannot show an economic or competitive injury. Freedom Foundation identifies no direct economic effect or material adverse injury from the PDC's denial of the complaint. Further, Freedom Foundation fails to show any specific or perceptible harm. *The mere fact that an unfavorable result could become precedent to Freedom Foundation's potential future litigation is not a harm under RCW 34.05.530.*

*Id*. at 89 (emphasis added). We follow *Freedom Foundation*.

7

The Foundation cites to *Snohomish County Public Transportation*, 173 Wn. App. 504. In that case, a public transportation agency sought judicial review of a decision by the Public Employment Relations Committee (PERC). *Id.* at 508-09. PERC's decision concerned an unfair labor practice complaint which had the effect of withholding the benefit of a rule affecting the transportation agency's negotiation with employee unions. *Id*. at 514.

This court held that the transportation agency had standing based on an economic injury because the decision adversely affected the agency's ability to negotiate with the unions. *Id*. at 513-14. Therefore, the transportation agency was able to demonstrate a direct economic effect of losing this bargaining leverage. *Id*. at 514. But here, unlike the transportation agency in *Snohomish County Public Transportation*, Freedom Foundation cannot demonstrate a direct economic effect stemming from the PDC's decision.

The Foundation also cites to *Seattle Building and Construction Trades Council v. The Apprenticeship and Training Council*, 129 Wn.2d 787, 920 P.2d 581 (1996). In that case, the Trades Council sought judicial review of a decision by the state Apprenticeship Council. *Id.* at 790. The Apprenticeship Council's decision involved approving the standards for and registration of a competing apprenticeship program over the protest of the Trades Council without an adjudicatory hearing, which would likely alter competitive conditions for existing, approved programs. *Id*. at 796. Specifically, the evidence showed that the entry of additional programs into the apprenticeship market would mean more competition for attracting qualified apprentices among existing, approved programs. *Id*.

The Supreme Court held that the Trades Council had standing based on a probable economic injury. *Id*. But here, unlike the petition in *Trades Council*, the Foundation does not

demonstrate an immediate or probable economic or competitive injury resulting from the PDC's dismissal of the complaint.

Accordingly, we reject the Foundation's second argument regarding injury-in-fact and conclude that the Foundation fails to show that it suffered competitive harm.

3.    Associational Standing Analysis

The Foundation argues that it has associational standing because the Foundation has members who were harmed by the PDC's failure to address SEIU PEAF's FCPA violations. We disagree.

The Foundation vaguely asserts that all of its supporters were harmed by the PDC's decision not to punish SEIU PEAF's illegal activities. At the same time, the Foundation argues that the PDC's dismissal of its complaint against SEIU PEAF affects everyone who participates in representative democracy in Washington.

However, as stated above, to obtain standing a petitioner must show that that the agency decision caused some specific and perceptible harm, not some conjectural or hypothetical injury. *Freedom Foundation*, 14 Wn. App. 2d at 86. And "a petitioner's interest 'must be more than simply the abstract interest of the general public in having others comply with the law.' " *Thompson v. City of Mercer Island*, 193 Wn. App. 653, 663, 375 P.3d 681 (2016) (quoting *Chelan County v. Nykreim*, 146 Wn.2d 904, 935, 52 P.3d 1 (2002)). The Foundation's vague assertions fail to show how any of its members were specifically and perceptibly harmed by the PDC's decision or why they have more than an abstract interest in enforcement of the FCPA.

Accordingly, we hold that the Foundation fails to show that it has associational standing.

4. Summary

The Foundation cannot show it has individual standing or associational standing to seek judicial review of the PDC's dismissal of its complaint regarding SEIU PEAF. Therefore, we hold that the trial court did not err when granting the PDC's motion to dismiss the Foundation's petition based on lack of standing. Because the Foundation lacks standing, we do not address the Foundation's argument that the PDC lacked statutory authority to dismiss its complaint.

CONCLUSION

We affirm the superior court's order dismissing the Foundation's petition for judicial review.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

SUTTON, A.C.J.

CRUSER, J.